## No. 5358.

GULF, COLORADO & SANTA FE RAILWAY COMPANY *v*. JOHN W. REDEKER.

1. RAILWAY COMPANY.—Though a portion of a railway track has been but recently completed and is being operated only for construction purposes, the company is still bound to use all reasonable care to put the road bed in such condition that its employes engaged in running trains may use it with safety to themselves and to their co-employes.

EVIDENCE—BURDEN OF PROOF.—In a suit for damages alleged to have resulted from the negligence of defendant, if the plaintiff's evidence shows that the injury was caused by the negligence of defendant, and does not

disclose any fact from which a want of care on plaintiff's part might be inferred, then the burden of proof is on the defendant, if he relies on contributory negligence as a defense, to show that the plaintiff was guilty of such negligence.

3. PLEADING—NEGLIGENCE.—In such a suit, the petition need not negative by distinct averments the contributory negligence of the plaintiff, unless the allegations made would show prima facie that he was negligent.

4. ASSIGNMENT OF ERROR.—Attention again called by the opinion to the fact that assignments of error violative, in their preparation, of Rule 26 (47 Texas, 602), will not be considered on appeal.

5. NEGLIGENCE.—A brakeman on a railway train was ordered at night by the conductor to make a coupling on a portion of the road bed which was completed, though operated for construction purposes only. In doing so he stepped into a depression in the road track between the cross ties at a place which had not been filled up, and fell down; in pulling his foot out, the pilot of the engine ran over him, catching and crushing his foot and leg. The only fact shown to relieve the road from liability was that it was not open for general business of transportation. *Held*, that the road was liable for resulting damages.

6. EXCESSIVE VERDICT.—See statement of case for facts under which it was *held* that a verdict for seven thousand two hundred and fifty dollars, in favor of a brakeman on a railroad who had been injured by the negligence of the company, was not excessive.

APPEAL from Tarrant. Tried below before M. D. Priest, Esq., Special Judge.

In addition to the facts stated in the opinion, it should be added that it appeared in evidence that the appellee at the time he received the injuries, was working on a moonlight night with a heavy fog prevailing, on a portion of the road bed he had never seen. He had been at work for the corporation continuously for eighteen hours before the injury. The following portions of the evidence of appellee, do not appear from the transcript to have been contradicted:

"I was ordered by Mr. Sol. Bills, who had employed me (and whose order I was bound to obey or be discharged for violating the same) to uncouple a flat car from the head of the engine. I stepped in to pull the pin, and as I did so there was no ballast between the rails and over the ties and my foot slipped between the ties. Before I could raise it out the pilot hit my foot about half way between the foot and the knee, and rather than let it knock me down and kill me, I threw myself to one side with the intention of pulling my leg out from under the pilot and the rail under the pilot after it had passed over, but the pilot being so low could not get my leg out at all till after the pilot passed over me.

I was turned almost completely around, with my feet from the engine and head toward the engine, and my legs were so badly crushed it was necessary to amputate the right one, and the left one was badly bruised and crushed.

" There was no ballasting between the ties, and when I stepped in between the end of the car and the engine I stepped on a tie, and so on until I missed the tie and my foot slipped in between them. I succeeded in pulling the pin out without difficulty, when I first took hold of it, and the engine gave the slack. I did not know whether or not the road was ballasted there; before I was hurt and while I lay on the track after being injured I saw there was no ballasting between the ties. The distance from the top of the ties to the dirt was eight, nine or ten inches. When I fell, I calculated I would be able to pull my feet out from under the cowcatcher without getting them hurt, as I knew pilots were always at least six inches above the rail, and knew there was plenty of room for my legs without their being crushed at the top of the rail between that and the cowcatcher. My legs were crushed about half way between the knee and the foot; the cow catcher was was not more than an inch above the rail. I knew this, because I saw it after they came with the light as I lay there on my back after being injured. I looked as I lay there, to see how I was injured; the position I lay in after being hurt was on my back with my feet from the engine and my head toward the engine. Immediately after being hurt I saw Charley Mayer, Sol. Bills, Mr. Wilson and Ben Ackerman. When I was hurt Mr. Ackerman was on the water car behind the engine asleep. Ackerman, the fireman, was worn out with work, as we had been out eighteen hours and our customary day's work was but ten, and he was asleep. Charley Mayer was in his place. There were also on the engine Sol. Bills and Mr. Wilson, the latter just riding on the train with us from Alvin. Sol. Bills was running the train. It was a moonlight night, but there was a very heavy fog. I think it was between twelve and one o'clock at night that I was hurt.

"When we came to the side track where I was hurt we wanted to get out a couple of flat cars, and I was ordered to cut this car in front of the engine off the main track. I was then making my fourth trip over the road. I had not noticed the condition of this cow catcher at the time. No one ever called my attention to it and I did not know how high it was over the rail. I had worked for the company about twenty-four days. Had nothing

at all to do with the cow catcher. It was the business of Sol. Bills, not myself, to attend to keeping the engine in repair. I did not know the condition of the track at the place I was hurt; had never been on the ground at that place before. I went in between the flat car and the engine at the right of the engine to pull the coupling pin; had to keep walking in front of the engine to keep the pilot from striking me as I did so, but I happened to miss a tie, and before I could raise my foot from between the two ties it had slipped between, the pilot struck me. Rather than have it run over me, I threw myself to one side, and if the pilot had been as much as six inches high above the track I could have pulled my leg out from under it without being hurt. If the ties had been ballasted there would have been a smooth surface to walk on and no place for the foot to slip down. The wheels of the engine did not touch me, my legs were crushed by the cow catcher or pilot. My right leg had to be amputated, and my left leg was crushed so that the flesh all came away and exposed the muscles. When the flesh and skin grew again the muscles had contracted, and the left leg is now somewhat short and crooked. The bones on that leg are now all healed over, but the sores still remain. I can not raise my pants and let the jury see it, as I have to soak the bandages in order to get them off. Have still to dress the leg twice each day. After being injured I was taken to the infirmary at Houston, arriving there about half past three o'clock in the morning. The next day about nine o'clock my right leg was amputated a little below the knee, after which I was unconscious for three days. I remained very sick in bed six months, my health since then has not been as good as before. The stump of the amputated leg has healed up, but it has broken out several times since it healed. About ten months after I left the hospital I was in bed about two months, when I had to have a surgical operation performed on my leg, the bones being scraped. Until about four months after the accident the pain was so great I had to be kept under the influence of morphine all the time. Had also to take morphine to ease the pain when the surgical operation was performed on my limb ten months after I left the hospital. Have worked none since I was hurt, I can do no work. Have to have water brought to my bed every morning and evening to dress my limb, but I can dress myself. There is no work I can do to make a living. Write a poor hand. Have to get up on my crutches and can not walk very far on my crooked leg. Am very weak, can hobble a

little distance with one crutch, on a pinch I could walk three-quarters of a mile on crutches.  When I got hurt they were working in Houston building bridges and laying switches.  At the time I was hurt they were not working on the road along that part where I was hurt.  Brakemen have nothing to do with the engine.  I made one trip over to Alvin in the day time.  The other trips were made at night."

C. H. Mayer testified, among other things, as follows:  "Before Redeker was hurt, I did not formally notify any of the company's agents or employes of the condition of the pilot, but Sol. Bills, the conductor, knew the condition it was in, as he ordered me to fix it up and helped me himself at different times.  Sometimes in going over a low joint the pilot would strike the track, and I would mention to him then that the pilot was defective, and that if it was not fixed somebody would get killed some day when it struck a crooked tie; but he would say that it was all right and that he was running that train."

Verdict and judgment for seven thousand two hundred and fifty dollars.

*Davis, Beall & Rodgers*, for appellant, on the burden of proof regarding contributory negligence, cited Galveston, Harrisburg & San Antonio Railway Company v. Lempe, 59 Texas, 19; Watson v. Houston & Texas Central Railway Company, 58 Texas, 438; Houston & Texas Central Railway v. Fowler, 56 Texas, 452; Philadelphia & Reading Railroad v. Schertle, 2 American and English Railroad Cases, 159; Ib., Smith v. Potter, page 140; Wharton on Negligence, 213; 2 Rorer on Railroads, page 1200; Mobile & Ohio Railroad Company v. Thomas, 42 Alabama, 672, 719; Illinois Central Railway Company v. Houck, 72 Illinois, 285; Kansas Pacific Railway Company v. Salmon, 11 Kansas, 83; Hough v. Texas Pacific Railway Company, 100 United States, 213; Henry v. Staten Island Railway Company, 81 New York, 373; Way v. Illinois Central Railway Company, 40 Iowa, 341; 2 Rorer on Railroads, pages 1200 and 1214; Steffen v. Chicago & Northwestern Railway Company, 46 Wisconsin, 259.

That appellee, as a brakeman on a construction train, assumed the risk incident to the position, they cited Galveston, Harrisburg & San Antonio Railway Company v. Lempe, 59 Texas, 19; Chicago & Northwestern Railway Company v. Ward, 61 Illinois, 130; Flanagan v. Chicago & Northwestern Railway Company, 45 Wisconsin, 98; Sweeney v. Central Pacific Railroad Company, 57

California, 15; Catherine De Forest v. Jewett, 88 New York, 264; McGinnis v. Canada Bridge Company, 8 American and English Railroad Cases, page 135 and notes cited; Wharton on Negligence, sections 206 and 214; Thompson on Negligence; 1009 and 1016; Wood on Master and Servant, section 382.

That if the injury resulted from the negligence of a fellow servant plaintiff could not recover, they cited Houston & Texas Central Railway v. Rider, Texas Law Review, volume 4, page 292; Dallas v. Gulf, Colorado & Santa Fe Railway Company, 61 Texas, 197; Robinson v. Railway Company; 46 Texas, 540; Wood on Master and Servant, section 332, pages 743, 744; Thompson on Negligence, volume 2, page 1084; Sutherland on Damages, 56, 57; 2 Rorer on Railroads, 831, 832, 1193, 1194, 1195.

*W. McLaury* and *Ball & McCart,* for appellee, that there was no error in the charge of the court, cited Houston & Texas Central Railway v. McNamara, 59 Texas, 255; Houston & Great Northern Railroad v. Randall, 50 Texas, 254; Galveston, Harrisburg & San Antonio Railway v. Lempe, 59 Texas, 19; Houston & Texas Central Railway v. Pinto, Texas Law Review, volume 3, page 9; Railroad v. Doyle, 49 Texas, 190; Railroad v. Dunham, 49 Texas, 181; Galveston, Harrisburg & San Antonio Railway Company v. Pat. Delahunty, 53 Texas, 206; Railroad v. Estes, 96 Illinois, 470; Patterson v. Pittsburg Railroad, 76 Pennsylvania State, 389; Porter v. Railroad, 71 Missouri, 66; same case, 2 American and English Railway Cases, 44; Cone v. Railroad, 81 New York, 207; same case, 2 American and English Railway Cases, 57; Ellis v. Railroad, 95 New York, 546; same case, 17 American and English Railway Cases, 641; Snow v. Hoosatonic Railroad, 8 Allen, 441; Hough v. Railroad, 100 United States, 213; Gibson v. Railroad, 46 Missouri, 163; Wood on Master and Servant, section 336; W. & W. Railroad v. Frederick, 71 Illinois, 294.

That it was the duty of the company to furnish a reasonably safe road bed and a reasonably safe engine, they cited Texas Mexican Railroad Company v. Whitmore, 58 Texas, 279; Galveston, Harrisburg & San Antonio Railway v. Delahunty, 53 Texas, 206; Railroad Company v. Spicker, 61 Texas, 427; Dallas v. Railroad Company, 61 Texas, 196.

That the verdict was not excessive, they cited Houston & Great Northern Railroad v. Randall, 50 Texas, 255; Houston & Texas Central Railway v. McNamara, 59 Texas, 259; Texas & Pacific Railway v. O'Donnell, 58 Texas, 27; Houston & Texas

Central Railway v. Boehm, 57 Texas, 152; Texas Mexican Railway v. Whitmore, 58 Texas, 276; Collins v. Council Bluff, 32 Iowa, 324; Gale v. New York Central Railway, 76 New York, 594; Caldwell v. Steamboat Company, 47 New York, 282; Shaw v. Railroad Company, 8 Gray, 45; 25 California, 460; Solen v. Railroad Company, 13 Nevada, 106; Union Pacific Railway Company v. Young, 19 Kansas, 488; Walker v. Erie Railway, 63 Barbour, 260.

GAINES, ASSOCIATE JUSTICE. This was an action of damages for personal injuries, brought by appellee, a minor, by his next friend, against appellant. Appellee was employed as a brakeman on a construction train of appellant, and received the injury while coupling cars at night. The evidence shows that the accident was caused by a defective pilot to the engine and a defective track on the siding where the coupling was attempted to be made. The track was not filled in between the cross ties, and by reason of this, appellee in stepping upon it fell and his leg was caught by the pilot and crushed.

The appellant complains that "the court erred in that part of its charge wherein the jury were instructed that it was the duty of the defendant to furnish a safe road bed; and that the burden of proof shifted to defendant to show that plaintiff was guilty of contributory negligence."

Under this assigment it is submitted in substance that, because the evidence showed that appellee was employed as a brakeman on a construction train engaged in building an unfinished road, so much of the charge as instructed the jury that it was the duty of the company to furnish a safe road bed was calculated to mislead them. That there must of necessity be a time in the constructing of a railroad when its track is not perfectly safe, we think a proposition that does not admit of doubt. The employes operating a train at such time must be presumed to have assumed the additional risk incident to that state of affairs. But we can not assent to the doctrine that, when a portion of a road is completed and is being operated for construction purposes only, the company is not bound to use all reasonable care in putting it into such condition that its employes, engaged in running trains over it, may use it with safety to themselves and their co-employes.

We see nothing in the circumstance that a road is not finished so as to be opened for the purposes of traffic to make this

an exception to the general rule that the master must furnish the servant with safe machinery and appliances for the work he is called upon to perform. In this case the injury occurred on a side track. The road had been completed beyond this, and trains were being run past it for construction purposes; and in the absence of some proof showing a necessity for leaving the siding in an unfinished state, it must be held that it was the duty of appellant to put it in a condition to be operated in safety by its employes.

It follows from what has been said that the charge of the court was not calculated to mislead the jury upon this point.

Under the assignment of error above set out, counsel for appellant submit the further proposition that "It was error to instruct the jury 'that the burden of proof of the contributory negligence of the plaintiff shifted to the defendant,' under the pleadings and evidence in this case, and the charge of the court was calculated to mislead the jury."

The charge of the court upon this subject is as follows: "Under these issues the burden of proof is upon plaintiff and to entitle him to recover, he must have shown to your satisfaction that he has been injured substantially as alleged in his petition, and that such injury was not caused by contributory negligence of plaintiff, as hereinafter charged. If this has been shown to your satisfaction, the burden of proof then shifts to the defendant, and it devolves upon the defendant to show that it is not liable for damages by reason of the contributory negligence of plaintiff, as hereinafter charged."

There is nothing in these instructions of which appellant has the right to complain. In the case of the Dallas & Wichita Railway Company v. Spicker, 61 Texas, 427, it is held that if plaintiff's evidence shows that the injury was caused by the negligence of defendant, and does not disclose any fact from which a want of care on his part might be inferred, "then the burden is on the defendant to prove that plaintiff was guilty of such negligence." It is also decided in the case of the Houston & Texas Central Railway Company v. Cowser, 57 Texas, 293, that a petition need not negative the negligence of plaintiff, unless his averments show *prima facie* that he was negligent. We are aware that a contrary rule has been laid down by some courts, but we see no reason for a departure at this time from the doctrine of our own courts. The testimony nowhere discloses any

negligence on part of appellee, and hence, we think, there was no error in the charge in regard to the burden of proof.

The charges asked by appellant in the court below were three in number, and each presented a distinct issue. They were all refused. The assignment upon this action of the court is that "the court erred in refusing the charges asked by defendant." The rules provide that "assignments of error which are expressed only in such general terms as that the " *   *    court erred in its charge when there are a number of charges   *   *   and the like   *   *   will not be regarded by the court as a compliance with the statute   *   *   and will be regarded as a waiver of errors   *   *   ." (See Rule 26, 47 Texas, 602.) This assignment, therefore, is too general and will not be considered.

The fifth assignment of error is, that "the verdict of the jury is contrary to the evidence with respect to the risk that plaintiff assumed in taking work as a brakeman upon the construction train of defendant, upon an unfinished road."

The evidence on the trial showed that the road was being operated for construction purposes, that appellee was injured in the night, and that the injury was caused by the fact that the space between the cross ties had not been filled, and that he was ignorant of this defect at the particular place. It would seem to be a matter of no moment whether the pilot was in proper order or not; but for the defect in track he would not have fallen and no accident would have occurred. There is nothing shown to relieve appellant from liability for the injury except the fact that the road was not open for the general business of transportation; and we think this fact did not absolve the company from responsibility. The evidence, therefore, warranted the finding of the jury.

Appellee lost one leg by reason of the accident, and the other was also injured. He had not recovered fully at the time of the trial. We can not, under the rulings of this court in similar cases, say the damages were excessive.

The motion for a new trial was based upon alleged errors which have already been considered, and it was not error to overrule it.

Because we find no error in the judgment, it is affirmed.

*Affirmed.*

Opinion delivered December 21, 1886.