Texas & Pacific Railway Co. v. John R. Magrill et ux.

Delivered February 25, 1897.

**1. Condition of Railroad Track—Notice to Employe.**

Evidence that a brakeman had been running over a certain division of a railroad for a year or more is not sufficient to charge him with notice of the condition of the track.

**2. Railway Company—Personal Injuries—Post of Duty and Contributory Negligence of Employe.**

The head brakeman of a freight train was killed while riding in the cab of the engine. The evidence showed that it was a common practice for head brakemen to sit in the cab when not needed at the brakes, and that there was no rule or custom of the company forbidding it. The position in the cab was not more dangerous than upon the cars. Held, that the brakeman in riding upon the engine was neither away from his post of duty nor guilty of contributory negligence.

**3. Pleading—Gross Negligence Includes Ordinary Negligence.**

An allegation of gross negligence includes a charge of ordinary negligence, and will support a verdict based upon a finding of the latter.

**4. Same—Contributory Negligence—Disobedience of Orders.**

A defense of disobedience of orders by a railway employe injured is not admissible under a general plea of contributory negligence.

**5. Charge of Court—Harmless Error.**

A charge wrong in theory is harmless, where the jury, under the facts, could not properly have found otherwise than they did.

**6. Same—Not Full—Requested Instruction.**

A charge correct as far as it went is not subject to complaint, in the absence of a fuller instruction requested.

Appeal from Gregg. Tried below before Hon. Felix J. McCord.

*T. J. Freeman* and *Cate & Teagarden,* for appellant.

*De Graffenried, Young & Stinchcomb,* for appellees.

WILLIAMS, Associate Justice.—This is an appeal from a judgment recovered by appellees, the father and mother of George F. Magrill, for damages resulting from the death of the latter, who was killed on the 19th day of March, 1894, while in the employment of appellant as brakeman. The petition alleged that the deceased was killed in the wreck of a freight train near Santo, in Parker County, caused by the defective condition of defendant's engine and track, and charged that this defective condition resulted and Magrill's death was caused by the gross negligence of defendant.

The defensive pleadings were, (1) a general denial; (2) that, if the track and appliances were out of repair, deceased knew it, and assumed the risk arising from such condition; (3) a plea attempting to set up contributory negligence, as follows: "That if plaintiff's son was killed as alleged, which is denied, the same was the result of his own contributory negligence, and did not result from any negligence or fault on the part of defendant or its employes."

A trial was had before a jury, and verdict and judgment rendered for plaintiffs for $1995.

The evidence showed that, while George Magrill, who was the head brakeman upon one of defendant's freight trains traveling westward on the 19th of March, 1894, was riding in the cab of the engine, a horse was struck, the engine was derailed, the train wrecked, and Magrill was killed. There is no dispute about the fact that the track, at the place where the wreck occurred, was in a very defective condition. Some of the evidence tends to show that, at the point where the front wheels of the engine first left the rails, the track remained unaffected, except by the indentations left by the wheels upon the ties. Upon this fact, some of the witnesses give it as their opinion that it was only the collision with the horse that caused the derailment and the wreck of the train, and that these were due in no measure to the defective condition of the road. This is now the principal contention of the appellant.

The case, in this, is very like the case of Railway v. Green, 36 S. W. Rep., 812; same case in Supreme Court, 38 S. W. Rep., 31. We conclude, as we did in that case, that the evidence authorized the jury to find that the bad condition of the track either caused the train to leave the rails and afterwards to turn over, or that it co-operated with the force of the collision with the horse, and contributed to the occurence, as one of its proximate causes. The defects in the track consisted in rotten ties, which broke under the weight of the cars. In many of the ties the spikes which held the rails in alignment were so loose that they could be pulled out with the hand, and this condition of the road had necessarily existed so long that defendant, with the exercise of ordinary care, ought to have discovered it long before the accident occurred. There is also evidence tending to show that parts of the wheels and trucks of the engine were broken before the wreck, and that some of the breaks, at least, were such as might have contributed to the accident; but we do not consider it necessary, in view of the condition of the track, to inquire closely as to the part these defects in the engine may have had. Some of the evidence, which must, in view of the verdict, be accepted as true, makes it very plain to our minds that the striking of the horse is not an adequate explanation of the character of the accident which occurred. It is reasonably certain, from the condition of its body, that the animal was not caught and drawn under the pilot or any part of the engine, but that it was thrown from the track. Yet the engine and cars left the rails, the ties broke under them, the rails spread, and the engine and many of the cars were turned over, piled up, and broken to pieces.

The fact that the marks of the engine wheels were found upon a part of the track which was not thus affected, is not inconsistent with the conclusion that its bad condition operated in causing the derailment and wreck. The evidence showed that in that part, there were many rotten ties in which the spikes were loose, and this, in all probability, explains the fact that the wheels left the rails. It is improbable

that the striking of the horse, when it was evidently thrown from the track and not caught under any of the cars, by itself, threw the engine from the rails. The jury were warranted in so finding. But, even if it were true that the engine was first derailed by the horse alone, in its further course it ran upon the part of the track where all of the ties were rotten, and the track was not sufficient to give such support as a sound one would have given. It was here that deceased was killed, and the jury could have well found that this condition of the track contributed to his death. We must therefore conclude that the negligence of defendant in keeping its track in this defective and dangerous condition, was at least one of the causes which contributed proximately to the death of Magrill.

Another of appellant's contentions is that Magrill knew, or ought to have known, of the condition of the track, and hence that he assumed the risk. We do not think that there is enough evidence in the record to even raise the question. It appears that deceased had been running over that division, as brakeman on trains, for a year or more. There is nothing in this to show that he had any opportunities to learn the condition of the road.

It is urged that deceased was guilty of contributory negligence in riding upon the engine, and, as some portions of the charge relating to this question are attacked, we will indicate the nature of the evidence bearing upon it. Magrill was head brakeman, whose duty it was to look after the brakes on the forward cars of the train. When applying brakes, his position was upon the top of the cars. There were no regulations of the company which defined his "post of duty," further than it may be inferred from the nature of the service which he was expected to render. He was subject to the orders of the conductor. All of the testimony showed that, on this road, it was a common practice, unobjected to, for the head brakeman to sit in the cab of the engine, when not needed at the brakes, especially in wet or cold weather, as he could nowhere else obtain shelter. The rear brakeman, who had charge of the brakes on the rear portion of the train, went into the caboose for like purposes. There was no rule or custom of the company which forbade this. Both conductor and engineer had orders for their guidance in running the train, and one witness stated that it was sometimes necessary for the head brakeman to get information from the engineer. There is evidence that, during the night preceding the accident, the conductor had reprimanded deceased for not being upon the top of the cars to apply brakes when going down hill, and had said to him: "I want you to ride out on top of the train, to have your assistance in going down hill;" to which deceased replied, "All right." This occurred at a point 42 miles east of the place of accident, and, afterwards, deceased was at his brakes at the descent of every hill. The last hill passed was seven miles east of Santo, where the wreck occurred, and between it and Santo and about fifteen minutes before the accident Magrill went upon the engine, and was sitting in

the cab when the train was wrecked. It was raining and cold. There was no stop to be made and no hill to be descended for more than seven miles west of Santo. There was nothing for deceased to do, either upon the cars or in the engine, at the time of the accident. It is not shown that the position in the cab is inherently more dangerous than that upon the tops of the cars, and we are of the opinion that it is not. Of the cars composing the fore part of the train, all were wrecked between the engine and the eighth car from it, and the eighth was partly derailed. There is no means of knowing what would have been the fate of Magrill, had he remained upon the top of the cars. It is conceded that, if he had been on any of them between the eighth and the engine, he would have been at his proper station, and we think it equally plain that, when riding on the engine ready to perform his duties when the time should come, he was at a post which the nature of those duties and the usages of the service made it proper for him, under such circumstances, to occupy. We conclude that he was neither out of the service of the defendant, nor omitted the exercise of ordinary care, in riding upon the engine.

These findings dispose of all of the assignments of error which present questions of fact merely. Upon all of these points, the verdict of the jury is sustained by the evidence.

*Conclusions of Law.*—1. The court did not err in refusing to instruct the jury to return a verdict for defendant.

2. The allegations of gross negligence in the petition included a charge of ordinary negligence, and support a verdict based upon a finding of the latter.

3. The charge given by the court contained every rule announced in the special charge No. 2, the refusal of which is the subject of the second assignment, except that which sought to charge Magrill with assumption of the risk of the bad track, "if, from his opportunities to see and observe it, and his means of information, he must have known the condition of the track at that point." There was no evidence to warrant this instruction. The court correctly instructed that it was not Magrill's duty to inspect the track. If he had opportunities which should have brought to him knowledge of its condition, the burden was on defendant to show it.

4. Special charge No. 8 was properly refused. It was as follows: "You are further charged, gentlemen, that if you find from the evidence that the deceased, George F. Magrill, was at the time of the accident riding on the engine in disobedience to orders and instructions, and that he had abandoned his post on the cars to ride on the engine for some purpose of his own, and that the position so taken by him was in this accident a more dangerous position than that where his duties required him to be, and you believe from the evidence that the taking of this position on the engine was the approximate cause of his death, that

is to say, but for this he would not have been killed, then you will find for the defendant, the railroad company."

In the first place, the pleadings of defendant were not sufficient, in our opinion, to admit such a defense as that referred to in the instruction. The answer does not set up disobedience of orders as a defense. This is not, we think, included in the general plea of contributory negligence, if that is sufficient to present the latter defense. If his act in getting upon the engine was not, in itself, negligent, when examined in the light of the circumstances under which it was done, it could not be shown to be so by proof that it was done in violation of orders given by the conductor, without a plea setting up that fact. This was not a fact which was involved in the development of plaintiff's case, and hence, to bring it in, pleading was essential.

But we think, also, that the instruction was wrong in assuming that there was evidence that deceased was on the engine in disobedience of orders. The conversation between him and the conductor shows that the substance of the instruction was that the brakeman was to be on the cars when going down hill; and this was certainly the duty of the brakeman, without instructions. The complaint was that he had neglected this duty, and the instruction was that he should not do so again. The evidence shows that the instruction was obeyed. No purpose on the part of the conductor appears to forbid the brakeman from going on the engine, as was customary, when the circumstances permitted him to do so without omitting the performance of his duties.

5. The court in its charge instructed a verdict for defendant, if the jury should find that Magrill's duty placed him upon the cars and that he left that station and went upon the engine, if the latter was a more hazardous place than the former, and if Magrill knew such fact, or by the use of ordinary diligence ought to have known it; but instructed that, unless his place upon the cars was less hazardous than in the engine, it would not matter if he did go on the engine. The complaint made of this instruction is that it makes Magrill's knowledge of the increased hazard of the position in the engine essential to the defense, and, further, that it makes the change of stations of no effect, unless the danger was thereby increased.

We think the charge, in theory, is wrong. If there was greater danger on the engine, Magrill would be charged with knowledge of the fact, as the danger was such as to be as well known to him as to any one else. If the jury, from the facts, could find that the engine was the more dangerous place of the two, Magrill, from the same facts, was bound to have known it. But we do not think his right to recover depends solely upon the comparative danger of the two positions. The question here upon which the jury were to pass, if the issue was admissible under the pleadings, was whether or not deceased, in going upon the engine, did an act which a person of ordinary prudence would not have done under the same circumstances. His knowledge or ignorance of the danger would not be the test, either. But, as said in our findings

of fact, we do not think it is shown that it was more dangerous to ride on the engine than on the cars, and we hold that the jury, under the facts, could not properly have found against plaintiffs on the ground that deceased was guilty of negligence in sitting in the cab, and this error in the charge is immaterial.

Under the decision in the case of Railway v. Murray, 73 Texas, 2, the answer of defendant was not sufficient to raise the defense of contributory negligence. The plea there was the same as that in this case. We are somewhat doubtful of the correctness of the ruling in that case as to the sufficiency of the plea, in the absence of exception, to admit evidence, but it is in point.

Nor do we think the facts relied on here to show contributory negligence are such as are admissible without pleading, though it must be admitted that all that has been written in our decisions on the subject has left it difficult, sometimes, to determine what can, and what can not, be be admittted without a plea setting up the facts of the defence. Railway v. Spicker, 61 Texas, 427; Railway v. Redeker, 67 Texas, 188; Railway v. Cowser, 57 Texas, 293; Railway v. Bennett, 76 Texas, 151; Brown v. Sullivan, 71 Texas, 470; Railway v. Crowder, 63 Texas, 502; Railway v. Foreman, 73 Texas, 311; Bonner v. Bean, 80 Texas, 152; Railway v. Shieder, 88 Texas, 152.

The opinion in the last case seems to renew the question as to whether or not the defense of contributory negligence is admissible under the general denial. Previous decisions in this State seem to have settled the rule to be that the defense cannot be made available without a plea setting it up, unless the case belong to the class defined in the Crowder, Murray, and Foreman cases. This case does not seem to belong to that class. Deceased, while riding on defendant's engine as its servant, was killed by its negligent failure to perform its duty by keeping its track in proper condition. To charge plaintiff with contributory negligence, defendant undertakes to show that he had gone from a safer position on the cars to a more dangerous one on the engine. It was not necessary to show this fact in developing plaintiff's case. As long as it is held that special pleas are necessary to raise the defense of contributory negligence in some cases and not in others, there must be a line of division between the two; and this necessarily makes the distinction between given cases, at times, very narrow. For the reasons given, we hold that the charge in question deprived defendant of no right.

6. The special charge No. 4, in which the meaning of the preponderance of the evidence is defined, was properly refused. Further instruction on that subject than the court had given was unnecessary. Besides, the requested instruction would have been misleading, in that it might have diverted the attention of the jury from the question whether or not the collision with the horse and the defective condition of the track together caused the wreck, and have led them to believe that they must find that the defects in the track alone caused it.

7. The charge on the measure of damages was quite general, but,

with other paragraphs, indicated to the jury what should be the basis of the assessment    As it was correct as far as it went, and as no fuller instruction was asked, appellant cannot complain.

8.    The other objections to the charge are taken to parts of it dis-connected from other portions, and present no meritorious ground for reversal.    The charge, with the exceptions mentioned above, was full, fair, and accurate.

*Affirmed.*