EL PASO ELECTRIC RY. CO. v. SHAKLEE.†

(Court of Civil Appeals of Texas. San Antonio. May 3, 1911. Rehearing Denied June 7, 1911.)

1. MASTER AND SERVANT (§ 236*)—RULES OF EMPLOYMENT—RELIANCE ON COMPLIANCE.

An employé of an electric railway company employed to repair electric wires by means of a tower wagon placed on the track may rely on the observance of a rule of the company providing that its emergency wagon must be given the right of way, though the rule is applicable only to motormen and conductors, the employé knowing that the rule was generally observed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 723–742; Dec. Dig. § 236.*]

2. APPEAL AND ERROR (§ 719*) — QUESTIONS REVIEWABLE—ASSIGNMENT OF ERROR.

In the absence of an assignment of error to the allowance of a trial amendment to a pleading, the court on appeal will not review the ruling.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2973; Dec. Dig. § 719.*]

3. MASTER AND SERVANT (§ 145*)—RULE OF EMPLOYMENT—CONSTRUCTION.

A rule of an electric railway company that its emergency wagon must be given the right of way, the same as apparatus of the fire and police departments, applies to an emergency wagon standing on the track to permit an employé to repair the wires.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 145.*]

4. MASTER AND SERVANT (§ 111*)—INJURY TO SERVANT—LIABILITY.

That the sun shone in the face of a motorman so that he could not by ordinary care discover an emergency wagon standing on the track for the repair of wires, in time to prevent colliding with it, did not relieve the company from liability for injuries to the employé in the collision.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 111.*]

5. APPEAL AND ERROR (§ 1033*)—HARMLESS ERROR—ERRONEOUS INSTRUCTIONS.

A charge that an employé of an electric railway company may not recover for injuries, if he was guilty of contributory negligence, is not prejudicial to the company for failing to charge on contributory negligence as provided by Gen. Laws 1909 (1st Ex. Sess.) c. 10, declaring that contributory negligence of an employé shall not bar a recovery, but the damages shall be diminished.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4056; Dec. Dig. § 1033.*]

**6. APPEAL AND ERROR (§ 742*)—QUESTIONS REVIEWABLE — ASSIGNMENTS OF ERROR — PROPOSITIONS.**

Objections raised by propositions under an assignment of error, but not contemplated or mentioned in the assignment, will not be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

**7. MASTER AND SERVANT (§ 265*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.**

A master has the burden of proving the contributory negligence of a servant unless the servant's pleadings or the undisputed evidence create a prima facie case of contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 893; Dec. Dig. § 265.*]

**8. DAMAGES (§ 213*)—AGGRAVATION OF INJURIES—INSTRUCTIONS.**

Where the answer in an action for injuries to a servant alleges that the injuries were aggravated by the servant's negligent failure to take proper care of himself, a charge that contributory negligence is such negligence as directly causes to produce or contributes in producing the injury or aggravates the injury so as to increase the injury, beyond what it would otherwise be, is not erroneous.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 541; Dec. Dig. § 213.*]

**9. MASTER AND SERVANT (§ 265*)—INJURIES TO SERVANT — CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.**

A master relying on the fact that the servant suing for a personal injury, aggravated the injury because of his negligent failure to observe the treatment therefor, has the burden of proving the facts in the absence of anything in the pleadings or facts of the servant making out a prima facie case of negligence on his part.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 893; Dec. Dig. § 265.*]

**10. MASTER AND SERVANT (§ 236*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.**

An employé of an electric railway company employed to repair wires by means of a tower wagon is not guilty of contributory negligence in working on the wagon, and could assume that he would be safe from cars running into the wagon.

[Ed. Note.—For other cases, see Master and Servant, Cent.Dig. §§ 723–742; Dec.Dig. § 236.*]

**11. TRIAL (§ 108½*) — VOIR DIRE EXAMINATION.**

The action of a servant suing for a personal injury in asking the jurors, on their voir dire, if any one of them was a shareholder in any accident insurance company is not misconduct, necessitating a reversal of the judgment for him, especially where the court did not permit the question to be answered or repeated.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 108½.*]

**12. TRIAL (§ 133*)—IMPROPER ARGUMENT—INSTRUCTIONS.**

Where the court sustained an objection to the argument of plaintiff's counsel that plaintiff had nothing to live on pending his trial for a personal injury, and charged the jury not to consider the argument, the misconduct was not ground for reversal in the absence of any evidence that the jury was prejudiced thereby.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 316; Dec. Dig. § 133.*]

**13. DAMAGES (§ 132*) — PERSONAL INJURY — EXCESSIVE DAMAGES.**

A person, 29 years of age, earning from $2 to $2.75 per day as an electrical worker, was injured so as to make him a cripple for life. For 60 days, he lay in bed with one of his legs in a plaster cast suffering great pain. He had a compound fracture of the hip and the bones failed to knit. *Held*, that a verdict for $12,500 was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385; Dec. Dig. § 132.*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Action by J. R. Shaklee against the El Paso Electric Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Leigh Clark, Nagle & Scott, and Baker, Botts, Parker & Garwood, for appellant. S. Engelking, for appellee.

FLY, J. This is a suit for damages alleged to have accrued to appellee from personal injuries sustained by him through the negligence of appellant. A trial by jury resulted in a verdict and judgment in favor of appellee for $12,500. All the facts necessary to a full understanding of the case have been found and discussed in connection with the different assignments of error.

[1, 2] The first assignment of error complains of the admission in evidence of this rule, made and promulgated by appellant as to the handling of its cars: "The company's emergency wagon must at all times be given the right of way the same as apparatus of the fire and police departments." It was objected to because irrelevant and immaterial in that the rule purports to be for the government of those operating the cars, because appellee was not furnished with a copy of the rule or knew of its existence, and because the rule applies to emergency wagons in motion, and because the rule was not pleaded until set up in a trial amendment. It was alleged in the original petition that appellee was in the employment of appellant in the work of repairing electric wires by means of a tower wagon, that the wagon had been placed upon the street railway track in order that appellee might perform his usual and necessary work in repairing an electric wire, and that he was standing on the top of the wagon, and while so engaged an electric car belonging to appellant, without giving warning of its approach, negligently, willfully and recklessly ran with great violence and speed against the tower wagon and upset it and threw appellee to the ground, a distance of more than 17 feet, and inflicted serious and permanent injuries upon him. There was evidence to the effect that appellee knew of the rule, and relied upon its being obeyed by those for whose government it was promulgated. Of course it did not apply to any except motormen and conductors, because they were the only ones who could run cars over or into emergency wagons, but it cannot be urged, with any reason, that, because it only applied to motormen and conductors, the em-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

ployé on the emergency wagon could place no reliance on its being observed. Appellee knew of the existence of the rule, knew that it was observed by motormen and conductors, and had never known it to be violated before, and he was justified in relying upon its observance. There was evidence that showed that it applied to a car standing still as well as one moving, and in fact no other reasonable construction can be placed upon it. The motormen and conductors so construed it and acted upon it. We cannot conceive that a street car company would command its employés to give the right of way to apparatus of the fire and police departments and emergency wagons when they were crossing the track, but owed no duty to them, under the rule, when for any reason they halted on the track. If there was ever a time that an employé needed protection from cars it would be when he was on the top of an 18-foot tower wagon engaged in repairing an electric wire. The rules are addressed to all employés concerned, and whether appellee was concerned in them or not he knew of the existence of the rule in question, he knew that it had been uniformly obeyed before when emergency wagons were on the track, and he had the right to rely on its being observed on the occasion in question. If it was necessary to plead the rule in order to introduce it in evidence in rebuttal of the charge of contributory negligence made against appellee, which we do not deem it necessary to hold, the action of the court in permitting appellee to file a trial amendment in which the rule was pleaded, has not been made the subject of an assignment of error in this court, and the correctness of the ruling will not be inquired into.

[3] We believe, as hereinbefore indicated, that the rule was directly applicable to a tower or emergency wagon standing on the tract for the purpose of permitting an employé to perform the duty of repairing wires, and therefore the court did not err in refusing to withdraw the rule from consideration by the jury. Witnesses testified that under such circumstances the rule was always observed before the time in question. This view of the matter disposes of the second assignment of error. It would be preposterous to hold that the persons sought to be protected by the rule could not rely upon its enforcement and observance because it was not directed to them, but to those who were to observe the rules.

[4] The court wisely and judiciously refused to charge the jury to exonerate appellant if the sun was shining in the face of the motorman in charge of the car so that he did not discover the emergency wagon upon the track, and could not have discovered it by ordinary care, in time to have prevented the collision. That was no defense to the action. If license could be given to motormen to run over an object 18 feet high and of other dimensions to correspond therewith, because the sun was shining in their faces, it would license the operation of an engine of destruction that would be a terror to the inhabitants of a city. If the sun was shining so as to render it impossible to see an object 18 feet high with a man on top of it, and a horse attached to it, the exercise of ordinary care and prudence and a just regard for the public safety would demand that no cars be run through the streets while the sun was robbing the employés of their powers of vision. If the sunshine being in the face of the motorman could justify a street railway in running a car over a wagon, man, and horse, men, women, and children could be crushed to death with impunity on the streets of any city. Better far that cars should not be permitted to move in a westerly direction in El Paso in the late afternoon than to give license to a pursuit that is a menace to life and property. The ordinary glint or glare of afternoon sunbeams cannot be pleaded and proved as an act of God that will exonerate a street railway company for its negligence in running into a wagon and injuring a human being thereon on the open streets of a city. Of course no authority is offered in support of such a proposition as is embodied in the third assignment of error.

[5] The fourth, fifth, sixth, seventh, and eighth assignments of error complain of the charge of the court on contributory negligence, which instructed the jury that a verdict should be rendered in favor of appellant if appellee was guilty of contributory negligence, as well as the rejection of charges on comparative negligence, the ground of complaint being that the charge should have been that the damages should be reduced in proportion to the amount of negligence attributable to appellee, as provided in General Laws of 1909 (1st Ex. Sess.) pp. 279–281. That act provides that contributory negligence on the part of an employé of any corporation, receiver, or other person operating any railroad in this state shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employé. Evidently that enactment was made in the interest of the negligent employé, and no one but such employé could have any ground for objection to a charge which in case of contributory negligence would prevent a recovery of any amount. If appellant is operating a railroad within the purview of the act in question, most certainly it was not injured by a charge that made the contributory negligence of appellee an absolute bar to a recovery, when under the provisions of the law he was entitled to some damages no matter if he had been guilty of contributory negligence. Appellant was greatly favored by the charge, if it is comprehended in the act of 1909, and the charge is correct if it is not. This question arose in the case of Railway v. Mills, 116 S. W. 852, and

this court held in connection with the act of Congress on the question of comparative negligence: "The federal statute was enacted to protect employés and fix the liability of employers, and a failure to give it in charge would hardly injure the cause of the employer." The state law was enacted to fix the liability of certain corporations to servants in some amount regardless of the contributory negligence of such servants, and the corporation has no ground of complaint, for the finding under the charge must have been that appellee was not guilty of any negligence. Railway v. Tack (Tex. Civ. App.) 130 S. W. 596. It follows that it is unnecessary to pass on the question as to whether the act of 1909 applies to street railway companies.

[6, 7] The ninth assignment of error is that the court erred in its charge to the jury in instructing the jury that the burden of proof was upon the defendant to show contributory negligence by a preponderance of the evidence, followed by the paragraphs of which complaint is made. However, in the two propositions under the assignment of error an attempt is made to raise objections not contemplated or mentioned in the assignment. They will not be considered, the only matter presented being whether the charge was erroneous in placing the burden of proving that appellee was guilty of contributory negligence on appellant. The rule as enunciated in the case of Railway v. Shieder, 88 Tex. 152, 30 S. W. 902, 28 L. R. A. 538, is the law of this state. In that case after fully discussing the question as to who should have the burden of proof as to contributory negligence the Supreme Court said: "We are of the opinion that the great weight of authority, as well as the reason of the law, is in favor of the rule which imposes the burden of proof upon defendant to establish plaintiff's contributory negligence, and it may be considered the settled law in this state. Railway v. Murphy, 46 Tex. 360 [26 Am. Rep. 272]; Railway v. Cowser, 57 Tex. 300; Railway v. Spicker, 61 Tex. 429 [48 Am. Rep. 297]; Railway v. Redeker, 67 Tex. 189 [2 S. W. 513]; Railway v. Bennett, 76 Tex. 153 [13 S. W. 319]." To the general rule announced there are two well-defined exceptions, one being when the legal effect of a plaintiff's pleading is such as to create a prima facie case of negligence on his part as a matter of law, when he must plead and prove such other facts as will rebut such legal presumption; the other exception being when the undisputed evidence establishes a prima facie case of contributory negligence against the plaintiff, as a matter of law, then the burden is on him to show facts that will prove that he was not negligent. The rule announced in the Shieder Case has since been followed in this state. Hogan v. Railway, 88 Tex. 679, 32 S. W. 1035; Lee v. Railway, 89 Tex. 583, 36 S. W. 63; Hillsboro v. Jackson, 18 Tex. Civ. App. 325, 44 S. W.

1010; Railway v. White, 22 Tex. Civ. App. 424, 55 S. W. 593; Railway v. Pina, 33 Tex. Civ. App. 680, 77 S. W. 979. Neither the pleadings nor the testimony brought this case within the exceptions to the rule.

[8] The court thus defined contributory negligence in the charge to the jury: "Contributory negligence is such negligence as directly or proximately causes to produce or contributes in producing the injury, or aggravates the injury so as to increase the injury beyond what it would otherwise be." The latter part of the clause is assailed on the ground that such aggravation of the injury was an independent act of negligence arising after the injury was inflicted, and as the burden to establish contributory negligence was placed on appellant that part of the charge added to its burden. There is no merit in the assignment. It added no burden, but gave it two ways to prove contributory negligence, and it could not have injured appellant. It is held in Railway v. McMannewitz, 70 Tex. 73, 8 S. W. 66: "A party who receives an injury resulting from the negligence of another, and who neglects to use proper means to effect a recovery, cannot recover for the aggravation of his injuries accruing from such neglect. This is but a branch of the doctrine of contributory negligence." The charge was appropriate under the allegations in the answer "that, if the plaintiff was injured, such injury was grossly and materially aggravated and increased by the plaintiff's negligence in failing to take proper care of himself, and to observe treatment of such injury, and especially in that he refused to obey the instructions and directions of the surgeon treating him, but willfully violated the same and used and manipulated his leg and thigh contrary to the directions of his surgeon long before the same had an opportunity to heal."

[9] The burden was on appellant to prove those allegations whether they constituted contributory or any other kind of negligence. There was nothing in the pleadings of appellee or the facts that made out a prima facie case of negligence on his part, but on the other hand, the facts pleaded and the facts proved showed that he was, when injured, through the gross negligence of appellant, at his post of duty performing the labor required at his hands, and that he must have necessarily been seen by the motorman in time for him to have stopped the car and have prevented the accident, if he had made any effort to do so. Appellee was not called upon to watch the car, but it was the duty of those in charge of the car to watch for and protect him. The evidence showed that the car was being run at a high rate of speed, or in the expressive, if not very elegant, language of Burton: "I looked down and saw this street car coming up the hill like the devil. * * * He was coming up hill like hell, and I hollered to the boys, 'Look out, boys, they are going to hit you,' and, bang,

they hit the wagon." The motorman was not placed on the stand by appellant. ."Emergency Wagon" was printed on the side of the wagon, and the motorman must have known what it was, and that it had the right to hold the track. The evidence was "that rule was always observed on work of this kind; the car would move up to within a car length or sometimes closer, and then stop until we told them to go ahead. I never knew of a case before where the car just proceeded to knock the wagon off." The motorman seems to have disappeared from the scene of action, and under the circumstances he cannot be blamed for disappearing, for a more flagrant case of criminal negligence, or a more brutal disregard for the safety of human beings, has never been presented to this court, than is presented by the facts of this case.

[10] There was nothing to obstruct the view of the motorman, unless his declaration that the sun did is worthy of notice, and he ran his car at a rapid speed on the streets of a city into a huge wagon. He must have seen it, and if he did not, it was negligence for him not to see it. It was his duty to see the wagon on the track, and appellant is charged with his negligence in failing to see it, and failing to use any means to stop the car if he did see the wagon. "It may be assumed, as a matter of law, that it is the duty of a street railway company to know that the track in advance of its car is clear, and that it will be liable for any injury resulting from the want of this knowledge, unless its liability is defeated by the contributory negligence of the injured person, or unless it appears that the person injured went upon its track at a place so near the approaching car that the driver could, by the exercise of care, not avoid the injury after the person was seen or might have been seen. This involves the proposition that such a railway company is bound to use such diligence as will enable it to know whether the track in front of its car is clear, and if to this end the exercise of the highest degree of diligence is necessary, it must be used." Railroad v. Hewitt, 67 Tex. 473, 3 S. W. 705, 60 Am. Rep. 32. Appellee was no trespasser upon the track, but was there in discharge of his duty, but if he had been a trespasser appellant owed him the duty to keep a lookout along its track, in order to discover him and protect him from injury. It is an utterly untenable proposition that appellee was guilty of contributory negligence in being where his duty demanded that he should go, and where he had the right to assume that he would be safe from cars running into him.

[11] The court did not err in refusing to discharge the panel after appellee had asked the jurors on their voir dire if any one of them was a shareholder or stockholder in any accident insurance company, especially as the court did not permit the question to be answered or repeated. This case is not parallel to the case of Lone Star Brewing Co. v. Voith, 84 S. W. 1100, in which there were repeated and persistent efforts upon the part of the attorneys of Voith to bring before the jury the fact that the Brewing Company was insured against damages arising from accidents. The same can be said of the case of Harry v. Brady, 86 S. W. 615. In that case repeated inquiry was made of jurors as to whether the fact that an accident policy had been taken out by the defendant would influence their verdict. In this case no such question was asked, but the question was asked one time if any of the jurors were stockholders or shareholders in any accident insurance company. It could not have had any influence on the jury. There is nothing to indicate any prejudice upon the part of the jury, and the evidence was of such a nature as to compel a verdict against appellant.

[12] The statement of one of the counsel for appellee that appellee had nothing to live on pending a trial was objected to by appellant, and the objection sustained, and "the jury were instructed by the court not to consider said argument of plaintiff's attorney and to wholly disregard the same." We will presume that the jury obeyed the instructions of the court as there is no evidence of any prejudice upon their part. Hogan v. Railway, 88 Tex. 679, 32 S. W. 1035.

[13] Appellee, when injured, was 29 years of age and was earning from $2 to $2.75 a day as an electrical worker, and he will never be able to work at his trade again. He is a cripple for life, and for 60 days lay in bed with his leg in a plaster cast, and suffered great pain and agony. Appellee had a compound fracture of the hip and the bones failed to knit and form a union. Appellee did not by any imprudence on his part aggravate his injuries, and he has very little use of his leg and is compelled to use crutches. We can see no evidence of passion or prejudice in a verdict for $12,500 under the facts of this case. The usefulness of this man's life has been greatly impaired, and his earning capacity almost destroyed, and he has suffered terrible pain, and the value of that usefulness and earning capacity, and the compensation for the suffering, have not been extravagantly estimated by the jury.

The judgment is affirmed.

JAMES, C. J., did not sit in this case.