TEXAS MIDLAND RAILROAD COMPANY v. J. W. BYRD.

Decided December 16, 1905.

**1.—Use of Railroad Track—Licensee.**

It is well settled that if a portion of a railroad track has been commonly and habitually used for a long time by the public as a footpath, with the knowledge and acquiescence of the company, it is considered as having licensed the public to use such portion of its roadbed for that purpose, and a person so using the track would occupy the position of a licensee.

**2.—Same—Degree of Care.**

Both the licensee and the servants of the company are under obligation to use ordinary care to avoid injury in such case.

**3.—Seeming Danger—Unnecessary or Imprudent Act.**

A party guilty of negligence is responsible for the result, if that negligence has caused another to be surrounded by such circumstances as to him appear to threaten injury, whether such person act prudently or imprudently, if, in an effort to avoid injury, he makes a choice of means from which injury results, although it may turn out that if he had done differently, or had done nothing, he would not have been injured.

**4.—Charge of Court—Harmless Error.**

The court charged the jury as follows: "If you find that, by reason of such negligence, if any, the plaintiff was placed in a position of *great danger*, and

that he, in his efforts, if he used such efforts, to escape from such impending danger, if any, fell from said trestle," etc. Held, if error, it was favorable to defendant, and furnishes no ground of complaint.

**5.—Disagreeing Jury—Instructions or Advice by Court—Error.**

A jury having notified the court that they could not agree, the court said to them: "I would suggest that you try to harmonize your views in a spirit of compromise and endeavor to reach a verdict." And again: "It is very important that you reach a verdict if you can. Frequently jurors think they can not agree when, in fact, they can, and sometimes do agree. Jurors, in their deliberations, should exercise a spirit of compromise, and try to harmonize their views and differences, and reach a verdict, if possible. The question of arriving at a verdict; however, is with each of you individually, and is a matter with your own conscience and judgment, and no one has a right to question or gainsay your motives." Held, reversible error.

Appeal from the District Court of Delta County. Tried below before Hon. R. L. Porter.

*Ogden & Brooks, A. H. Dashiell, Walter P. Napier* and *W. H. Lipscomb,* for appellant.—A person, whether as a licensee or a trespasser, assumes the risks incident to the business of the company whose way he uses, and can not recover for injury resulting therefrom. Chicago & N. W. Ry. v. Davis, 17 N. W. Rep., 413; Gallagher v. Humphreys, 6 Law Times (N. S.), 684; Vanderbeck v. Hendry, N. J. Law, 472; Williams v. Delaware, L. & W. Ry., 2 N. Y. Supp., 435; King v. Railway, 3 R. R. R., 875.

Railroad operatives have the right to assume that a person will leave the track in time to prevent an injury, and until it becomes apparent to them that such person does not intend leaving, they owe him no duty. Houston & T. C. Ry. v. Smith, 52 Texas, 185; Artusy v Missouri Pac. Ry., 73 Texas, 191; International & G. N. Ry. v. Kuehn, 70 Texas, 585; International & G. N. Ry. v. Garcia, 75 Texas, 583; Gulf, C. & S. F. Ry. v. Hill, 58 S. W. Rep., 257; St. Louis & S. F. Ry. v. Christian, 27 S. W. Rep., 933; Texas & Pac. Ry. v. Lowery, 61 Texas, 154; Galveston City Ry. v. Hewitt, 67 Texas, 480; St. Louis & S. F. Ry. v. Herrin, 6 Texas Civ. App., 724; Texas & Pac. Ry. v. Roberts, 37 S. W. Rep., 870; Frazier v. South & N. A. Ry., 28 Am. & Eng. Ry. Cases, 565; Georgia Pac. Ry. v. Blanton, 4 So. Rep., 621.

The undisputed evidence in this case showing that plaintiff was a trespasser on defendant's track and there being no evidence on which to submit the issue of discovered peril a verdict should have been instructed for the defendant. St. Louis & S. W. Ry. v. Shiflet, 11 Texas Ct. Rep., 488; 3 Elliott on Railroads, p. 1954.

In order to render the defendant responsible for injuries received by one in an effort to escape from an alleged danger; the latter must be such as threatens life or serious bodily injury. International & G. N. Ry. v. Neff, 87 Texas, 303; Williams v. Galveston, H. & S. A. Ry., 78 S. W. Rep., 45.

A failure to use the means at their command to avoid injuring a trespasser after his peril is discovered does not render a railway company liable unless it appears that he was discovered in time for the servants of the company to have prevented the injury. Missouri, K. & T. Ry. Co. v. Eyer, 96 Texas, 72.

It being undisputed that the defendant's train did not strike plaintiff and that he injured himself in attempting to get off the trestle, it was error to submit the issue of discovered peril. Texas & Pac. Ry. v. Breadow, 90 Texas, 27; Texas & Pac. Ry. v. Staggs, 90 Texas, 458.

The court erred in advising, instructing, and stating to the jury, after it had been in retirement to consider of its verdict in this case and had come into court and advised the court that the jurors were disagreed upon a question of fact, and upon the question of the liability of the defendant, and not upon a question of law, that the jury should be guided by a spirit of compromise in reaching its verdict in this case, and that the jurors ought to exercise a spirit of compromise and try to arrive at a verdict. Sargent v. Lawrence, 16 Texas Civ. App., 540 (40 S. W. Rep., 1075); Goodsell v. Seeley, 10 N. W. Rep., 44; San Francisco & S. M. Ry. v. Mahoney, 42 Pac. Rep., 969; Southern Ins. Co. v. White, 24 S. W. Rep., 425; Randolph v. Lampkin, 14 S. W. Rep., 538; Richardson v. Coleman, 29 N. E. Rep., 909; Edens v. Hannibal & St. Joe R. R., 72 Mo., 212; McPeak v. Missouri Pac. Ry., 30 S. W. Rep., 170; North Dallas Ry. v. McCue, 35 S. W. Rep., 1080; State v. Eathly, 83 S. W. Rep., 1081.

*Evans & Elder* and *W. E. Sharpe*, for appellee.—Where the track or ground of a railway is used by pedestrians as a passway for a considerable time without objection, or with a tacit acquiescence on the part of the company, a pedestrian crossing over such grounds or along such tracks becomes a licensee in such a sense that he is not to be considered as a mere trespasser acting at his peril. But it becomes the duty of the company, in operating its road at such places to use increased prudence and caution in proportion to the danger to such person, by maintaining a lookout upon its engines and trains and by giving audible signals on approaching such places, such as would be reasonably required on approaching a public crossing. 2. Thomp. Neg., sec. 124; Anderson v. Chicago, M. & St. P. Ry., 87 Wis., 195; Texas & Pac. Ry. v. Watkins, 88 Texas, 20; Hutchins v. St. Louis & S. W. Ry., 13-Texas Ct. Rep., 832; Missouri, K. & T. Ry. v. Mathews, 4 Texas Ct. Rep., 269; St. Louis & S. W. Ry. v. Shiflet, 11 Texas Ct. Rep., 488; Washington v. Missouri, K. & T. Ry., 90 Texas, 314; McCray v. Galveston, H. & S. A. Ry., 89 Texas, 168; Lee v. International & G. N. Ry., 89 Texas, 583 Gulf, C. & S. F. Ry. v. Mathews, 13 Texas Ct. Rep., 949.

Where the public for years has been accustomed to cross the track of a railway company upon a well defined path with the acquiescence of the company, although without its express license, a license to do so will be presumed. And persons so crossing to and fro are not in a strict sense trespassers, but are licensees. And the company is bound to take reasonable precautions to avoid injuring them. 2 Thomp. on Neg., sec. 1725; Thomas v. Chicago, M. & S. P. Ry., 72 N. W. Rep., 783, 39 Law Rep. Ann., 399; Wabash Ry. v. Jones, 53 Ill., 125; St. Louis & S. W. Ry. v. Shiflet, 56 S. W. Rep., 697; Louisville & Nash. Ry. v. Schuster, 7 S. W. Rep., 873; 6 Rap. and Mack Dig., 272; Shelby v. Railway, 3 S. W. Rep., 157; Chicago & E. I. Ry. v. Hedges, 105 Ind., 398, 7 N. E. Rep., 801; Houston & T. C. Ry. v. Sympkins, 54 Texas, 615; Snyder v. Natchez & Red River Ry., 44 Am. & Eng. R. R. Cases,

278; Savannah F. & W. Ry. v. Stewart, 71 Ga., 427; St. Louis & T. Ry. v. Crosnoe, 72 Texas, 79; Isabel v. Hannibal & St. J. Ry., 60 Mo., 475; Reiner v. Long Island Ry., 1 N. Y. Supp., 124; Galveston City Ry. v. Hewitt, 67 Texas, 479; Hughes v. Galveston, H. & S. A. Ry., 67 Texas, 598; Gulf, C. & S. F. Ry. v. Smith, 87 Texas, 348; Texas & Pac. Ry. v. Black, 87 Texas, 160.

A court may and ought to urge upon the jury all proper motives to induce them to agree upon a verdict, such as the propriety of a spirit of legal concession in their deliberations and the importance to the parties and the public of a verdict and the saving of time and expense of a new trial. Abbott's Trial Brief, Civil Jury Trials (2d ed.), p. 489, subd. 3; Wooten v. Partridge, 13 Texas Ct. Rep., 39; Insurance Co. v. White, 24 S. W. Rep., 425; Ahearn v. Mann, 60 N. H., 472; Gibson v. Minneapolis & St. P. Ry., 55 Minn., 177, 56 N. W. Rep., 686.

TALBOT, ASSOCIATE JUSTICE.—On the 18th day of July, 1903, appellee, Byrd, was walking upon appellant's railroad track in Delta County, Texas, going to Cooper. About three quarters of a mile north of Cooper there is a trestle in appellant's road approximately 200 feet long. When appellee was about midway of this trestle, walking upon the ties, and going south, he discovered one of appellant's trains rapidly approaching him from the north. In leaving the track to avoid being struck by the train appellee jumped or fell to the ground, some distance below, and was injured. This suit was brought to recover damages alleged to have been sustained on account of said injuries and it was alleged in substance, that at the time appellee was hurt, and for a long time prior thereto, appellant's said railroad track and trestle, where the injury occurred, was commonly, habitually and publicly used, with the knowledge, consent and acquiescence of appellant, as a footway by pedestrians in traveling to and from the town of Cooper. That appellant's railroad track for the distance of one-half mile north of the trestle is down grade and that a train approaching said trestle from the north can not be seen at a greater distance from said trestle than a half mile. That the agents and servants of appellant in charge of said train saw appellee while he was on the trestle and saw that he was in peril in time to have prevented the injury, and failed and neglected to use the means at their command to avoid injuring him, but negligently propelled and operated said train, without giving any notice or warning of its approach, until said train had reached a point near the north end of the trestle. Appellant pleaded a general demurrer, a general denial and contributory negligence. A trial by jury was had which resulted in a verdict and judgment for appellee in the sum of $2,000, from which this appeal is prosecuted.

The court did not err in refusing to give appellant's requested charge directing the jury to return a verdict in its favor. The theory upon which appellee seeks to recover is that he was a licensee and rightfully upon appellant's railroad track and trestle; that while so upon said trestle and without knowledge of the approach of appellant's train, its servants in charge thereof negligently ran said train so close to him, before giving any signal or warning of· its proximity, that death or serious bodily injury to him was threatened from a collision with said

train, that so imminent and threatening was the danger to him when the whistle of the train was sounded and he became aware of its approach, that, without any time whatever for deliberation, but upon a sudden impulse and in terror of the impending danger, he was caused to jump from the track and was injured. This theory is not without evidence to support it. Appellee testified: "I know the bridge on which it is alleged in my petition in this case that I was injured—it is 190 or 195 feet long. It is down grade coming to the bridge from the north for something like seven or eight hundred yards. Just before I got to the bridge I looked ahead to see if a train was approaching and then looked back up the track—I didn't see any train nor did I hear a train. I then started across the bridge, after looking, and I had gotten something like half way across it I guess when I discovered the general rummage of a train and as quick as I heard the general roaring of a train, I looked in front and looked back and saw the train about that time and it whistled and I jumped or fell; in some way or other I got off the bridge. I could not have been more than fifty yards from the train at that time. The train was then about the end of the trestle, right close to the end of the trestle. The train was running fast. The first thing that struck me was to get off there the best way I could, and I had to jump off on the cross beam. That was my intention, and in jumping I fell in some way, and fell from there to the ground. I don't know exactly how I got off—now I saw the train coming and I got scared and got off. The bridge at that point is something like 14 or 15 feet high. The train I spoke of was a freight train. I think it was running about twenty or twenty-five miles an hour. I don't think there was any board laying lengthwise on the bridge—I was simply walking from one tie to the other to get across the bridge. That he had seen others using the bridge, could not state the number, but it was frequently used." Other witnesses who were at or near the trestle at the time appellee was injured testified substantially as he did with reference to the distance the train was from the trestle at the time the whistle was sounded, and that its approach was not discovered by them until such signal or warning was given. A number of witnesses testified in effect that appellant's railroad track between the towns of Enloe and Cooper, including the trestle in question, was commonly used, by a great many people at the time appellee was hurt, as a foot path and had been so used for two or three years prior thereto. These witnesses testified to such constant use of said track and trestle as a footpath and by such a large number of people and for so long a time, that we think a jury would be justified in concluding that appellant and its servants operating trains over said track, had knowledge of such use and acquiesced in, or permitted the same. There was also testimony tending to show that the trestle was so constructed that a beam, or what is called a "capsill" about a foot square and 18 inches below the cross ties, extended about two feet on each side of the trestle, and that if a man was sitting or standing on the end of this sill he would be out of danger of a passing train. Appellant's engineer testified: "About a half mile from the trestle north to the top of the hill it is up grade. That morning when I came over the hill from the north side, coming up through the cut over the rise of the hill, I saw someone on the track and when I got over

the hill and in plain view I could then see him plain. When I got somewhere in the neighborhood of a quarter of a mile or so—well, I will say three hundred yards—I sounded the whistle. That was an alarm for him to get off the track and when I did so I could see plainly he was on the trestle and then I blew the whistle and reached down and checked the train with the air—and he stepped off the bridge, off from the railroad track and got down on the end of the cap-sill, which was entirely out of reach. The train would not have bothered him at all if he had sat there. When I sounded my whistle and applied my air I was a sufficient distance from him so I could have stopped the train before reaching him if he had not gotten out of the way. When I saw him get off from the track and onto that bench or cap-sill I released my brakes and let the train go, knowing that he was out of my reach. I first saw the man as I slowed up over the top of the hill, nothing prevented me from seeing him. When I first saw him I could not tell exactly right where he was. When I got up over the hill I discovered that he was on the trestle and I was then somewhere between a quarter and a half mile from the bridge. After I discovered the man on the track I did not blow the whistle until I got somewhere within 300 yards of the bridge." We have not, of course, undertaken to quote all the testimony, but only so much as is necessary to show that it is conflicting upon the main features of the case. We understand the law to be, that if appellant's railroad track or trestle, where appellee received his injuries, was commonly and habitually used by the public at the time of the accident as a foot path, and had been so used for several years prior thereto, and appellant had knowledge of such use, and acquiesced in or permitted such use, it will be considered as having licensed the public to so use such portion of its track. The latest expression of our Supreme Court upon the question, so far as we are advised, will be found in the case of Railway v. Matthews, 13 Texas Ct. Rep., 244. In that case it is said: "It is well settled by the decisions of this court, and by the decisions of courts of other states, that if a portion of the roadbed of a railroad company had been commonly and habitually used for a long time by the public as a footpath, with the knowledge and acquiescence, or by the permission of the company, it is considered as having licensed the public to use such portion of its roadbed for that purpose. The evidence in this case would justify a jury in finding that the railroad company had knowingly permitted the public to use its roadbed at the place of the accident for a number of years, and under such facts Matthews would be considered a licensee; that is, he would not be held to be a trespasser in the sense that his act of walking upon the roadbed would per se constitute negligence that would defeat a recovery for his death by his wife and children." That appellant had so permitted or acquiesced in the use of its roadbed and trestle would not, however, excuse appellee for a failure to exercise ordinary care to guard and protect himself from injury. But if appellee was a licensee he was not unlawfully on the trestle, and both he and the servants in charge of appellant's train were under obligation to use ordinary care to avoid injury; and to constitute that degree of care under such circumstances, required the exercise of more diligence and caution "than would have been required of either where there was less probability of injury." The facts, in our opinion, do not

show that, as a matter of law, appellee was guilty of contributory negligence in being upon appellant's railroad track and trestle, nor could appellant shield itself from liability by simply showing that the engineer had the train under control and could or would have stopped it before striking appellee had he not left the track. If the servants of appellant operating the train in question were guilty of negligence in not signaling its approach sooner than they did, and by reason of such negligence appellee was placed in a position of real or apparent danger, and impelled by sudden terror produced thereby, jumped from the trestle or fell in his effort to escape such danger and was not himself, under all the circumstances, guilty of contributory negligence in walking upon said trestle, then appellant would be liable, whether appellee acted prudently or imprudently to avoid the danger or apprehended danger. (Texas & Pac. Ry. Co. v. Watkins, 88 Texas, 20; Gulf, C. & S. F. Ry. Co. v. Smith, 87 Texas, 348; Gulf, C. & S. F. Ry. Co. v. Matthews, 13 Texas Ct. Rep., 949. In the case of International & G. N. Ry. Co. v. Neff, 87 Texas, 303, the following excerpt from Mr. Beach's work on contributory negligence is quoted with approval: "When a plaintiff through negligence of the defendant is placed in a situation where he must adopt a perilous alternative, or where in the terror of an emergency for which he is not responsible and for which the defendant is responsible, he acts wildly or negligently and suffers in consequence, such negligent conduct under these circumstances is not contributory negligence, for the reason that persons in great peril are not required to exercise all that presence of mind and carefulness which are justly required of a careful and prudent man under ordinary circumstances. In such case the negligence of the defendant is the proximate cause of the injury and the plaintiff may have his action—even though the injury would not have happened if the acts had not been done." In the further discussion of that case Judge Brown says: "If the railroad company was without fault, then it could not be held liable whether the injured persons acted prudently or rashly, because it had not placed them in the situation of danger. If, however, the railroad company was guilty of negligence in not giving the signals by which the deceased were caused to be in danger, then, whether they acted wisely and cautiously or otherwise, it is liable, because it is responsible for the circumstances which produced the action on their part." Adhering to this principle, he further says: "The rule is sound and just which holds the party guilty of negligence responsible for the result, if that negligence has caused another to be surrounded by such circumstances as to him appear to threaten the destruction of his life or serious injury to his person, whether that person be prudent or imprudent, if in an effort to save his life he makes a choice of means from which injury results, and notwithstanding it may turn out that if he had done differently, or had done nothing, he would have escaped injury altogether." The evidence is conflicting with respect to the distance the train was from appellee when the whistle was blown as a warning for him to leave the railroad track. The appellee and some of his witnesses testified in substance that the first warning or signal given of the approach of the train, was when it had reached a point within about fifty yards or 140 or 150 feet of appellee and that at that time it was running very fast. The engineer testified that when

about three hundred yards from appellee he sounded the whistle, applied the air and brought his train under control and could have stopped it before reaching appellee had he not gotten off the track.   He also testified without contradiction that when his train was distant a half mile from appellee he saw him on the track and when between a quarter and a half mile from him saw plainly that he was on the trestle.   We conclude there was testimony from which the jury was justified in finding that appellee was a licensee and that his presence, or that of some other person, might reasonably be expected to be on the trestle; that the natural and probable consequence of running a rapidly moving train in close proximity to one situated as appellee was would be to cause fright and a hurried effort to leave the track, which might result in physical injury to him; and whether under all the circumstances, appellant exercised the degree of care and caution imposed upon it by law to timely warn appellee of the approach of its train, or was guilty of negligence in not sooner giving signals of its approach and thereby caused appellee to be placed in a perilous position or one which reasonably appeared to him to be dangerous, and hence "responsible for the circumstances" which caused him to jump or fall from the trestle, or whether appellee was guilty of negligence contributing proximately to his injury, were issuable facts for the decision of the jury.

It results from what we have said, that in our opinion there was no error in permitting the introduction of evidence tending to show that appellant's railroad track and trestle, upon which appellee was walking on the day he was injured, was at that time commonly and habitually used as a footpath by the public without objection on the part of appellant, and that the court did not err to the prejudice of appellant in charging the jury, in effect, that if for many years immediately prior to that time said trestle was being so used with the knowledge, consent, permission and acquiescence of defendant, then it was the duty of its servants in operating said train, while approaching said trestle to have exercised ordinary care in the operation and control thereof so as not to endanger persons so using said trestle as a footpath.   Appellant's assignments of error from the second to the eighth, inclusive, are therefore overruled.   The court, in the fourth subdivision or paragraph of its charge wherein the jury was told that if they found a certain group of facts to exist to find for plaintiff, etc., used the following language: "And if you further find that by reason of such negligence, if any, the plaintiff was placed in a position of great danger, and that he in his efforts (if he used such efforts) to escape from such impending danger, if any, fell from said trestle," etc.   This portion of the charge is assailed and the contention made that "the court therein gave the jury an erroneous standard by which to determine appellee's justification in jumping from the trestle; that in order to render the defendant responsible for injuries received by one in an effort to escape from an alleged danger, the danger must be such as threatens life or serious bodily injury." That the language which counsel for appellant insists should have been employed, more definitely and correctly expressed and defined the degree of danger to which appellee must have been subjected by the negligence of appellant and which must have existed in order to relieve him from the charge of contributory negligence and rendering it imma-

terial whether he acted prudently or imprudently in his efforts to escape such danger, may be conceded, but we do not regard the error, if such it be, of such moment as to require a reversal of the case on that ground alone. The danger to which appellee was exposed, if any, in being upon the trestle with a rapidly approaching train, was that of a collision with such train, the result of which, most probably and naturally, would have been the destruction of his life or the infliction of serious bodily injury upon him. Such danger, we think, the jury, under the circumstances, must have understood was meant by the expression "great danger," and hence were not misled by that manner of expressing it. Besides, we are of the opinion, that if appellant desired the charge to more clearly and specifically express the character of the danger which would justify appellee in jumping from the trestle to avoid being struck by the train, it should have asked a special instruction to that effect. Nor do we think the case should be reversed because the charge under consideration required the jury to find in order to return a verdict for appellee, that he was placed by the negligence of appellant in a position of actual danger. It is doubtless true, that if the danger had been only apparent and not real, appellee would have been justified in attempting to escape it in the same manner and to the same extent that he would have been had the danger been real, provided it reasonably appeared to him at the time that danger actually existed; but the fact that the charge made appellee's recovery depend upon the jury's belief, founded upon the evidence, that appellee was in a position of actual danger, if error, was favorable to appellant and furnishes no ground of complaint.

It is made to appear by bill of exceptions that the following proceedings occurred in the trial court: the jury received the charge of the court and retired to consider of their verdict on the morning of January 4, 1905, and reported to the court at the noon hour that they did not think they could agree. They were required to resume their deliberations and just before the adjourning hour in the afternoon again came into court and announced they could not agree. Whereupon the court asked the foreman how the jury stood numerically and whether they differed on a question of fact or law—and he answered that it was a question of fact—a question of liability and that they stood nine to three. The court then said to the jury: "I will send you back to your room for further deliberation and I would suggest that you try to harmonize your views in a spirit of compromise and endeavor to reach a verdict in this case." After deliberating some time further they were discharged until the following morning, when they were returned to the juryroom and after a further deliberation of about two hours, again announced to the court that they could not agree, some of them stating they thought it impossible to agree. The court thereupon remarked: "Gentlemen, we have been engaged in the trial of this case for some time and it is very important that you reach a verdict if you can. Frequently jurors think they can not agree, when in fact they can, and sometimes do agree. Jurors in their deliberations should exercise a spirit of compromise and try to harmonize their views and differences and reach a verdict if possible. The question of arriving at a verdict, however, is with each of you individually, and is a matter with your own conscience and judgment, and no one has a right to question or gainsay your mo-

tives. You will retire and further consider this case." This action of the court is complained of and made the basis of appellant's eleventh assignment of error. In the case of Gulf, C. & S. F. Ry. v. Johnson, 14 Texas Ct. Rep., 97, recently decided by the Supreme Court of this State, the jury after having considered the case for nearly two days without reaching an agreement came into court and propounded to the presiding judge the following question: "Is it legal and right for a jury, in case they have failed to agree upon a verdict in a case, to make concessions in order to agree upon a verdict," in response to which the court gave this instruction, "Answering your question, will say that it is entirely lawful and proper to make concessions, provided of course, your verdict, as agreed to, is based alone upon the law as given in the charge, and the facts as you find them from the evidence." In holding that this instruction was erroneous Associate Justice Williams, speaking for the court, and after quoting from the decisions of other States, says: "These extracts show the views of those learned courts as to what the duty of jurors is in reconciling differences, and they only strengthen us in our opinion that the question is not one upon which the court may properly instruct or advise—courts may review the findings of juries to ascertain if they have been properly reached, but may not, in advance, influence the decision of questions of which the jury are the sole judges by instructions like that in question. The court can rarely know the state of each mind in a disagreeing jury whether it is a sincere and conscientious conviction upon a question of fact or merely a frivolous or captious objection sustained by nothing but pride of opinion, and an instruction intended for the latter state of mind might often reach and sway the former. The fundamental objection to such instructions is that the law, in our opinion, prescribes no rule for the court to lay down except that the jury are to find in accordance with the truth as their judgments, honestly applied to the evidence, lead them to believe it to be; or, as their oath expresses it, 'that they will a true verdict render according to the law and the evidence.' What prepossessions or inclinations of mind a juror may surrender consistently with an intelligent and conscientious discharge of this duty is for him alone to determine, for the reason that it is his judgment the law seeks to obtain, and he should be left to form it uninfluenced by advice from the court." These remarks are entirely pertinent here, clearly express the views of this court upon the subject, and are decisive of the question before us. It follows that the court's action was erroneous, and requires that this case be reversed and remanded for a new trial.

We deem it unnecessary to discuss the other assignments of error. They have been carefully considered with the conclusion reached that none of them point out any reversible error.

For the error indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*