PECOS & N. T. RY. CO. v. FINKLEA.

(Court of Civil Appeals of Texas. Amarillo. March 1, 1913. Rehearing Denied March 29, 1913.)

1. MASTER AND SERVANT (§ 270*) — ACTION FOR INJURIES—ADMISSIBILITY OF EVIDENCE —SAFE PLACE TO WORK.

On the issue of whether a railroad used ordinary care in furnishing a brakeman with a safe place to work, the fact that it was putting ballast on the track, which was then in course of construction, was admissible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 913–927, 932; Dec. Dig. § 270.*]

2. NEGLIGENCE (§ 3*)—DEGREE OF CARE REQUIRED.

The same degree of care does not necessarily imply the same quantum of diligence; in some instances ordinary care requires the exercise of great diligence, while in other cases the exercise of the same degree of care demands but slight diligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 5; Dec. Dig. § 3.*]

3. MASTER AND SERVANT (§ 204*)—MASTER'S LIABILITY—ASSUMPTION OF RISK.

Under Employers' Act (Acts 29th Leg. c. 163), prescribing when the defense of assumed risk shall be available to railroads in actions for death or personal injuries to an employé, a servant assumes only the ordinary risk incident to his employment, and is not required to quit his employment if under like conditions an ordinarily prudent person would continue in the work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 544–546; Dec. Dig. § 204.*]

4. MASTER AND SERVANT (§ 285*) — ACTION FOR INJURIES—QUESTION FOR JURY—CAUSE OF INJURY.

On evidence in an action for a servant's death, held, that the question whether any of the alleged obstructions caused him to fall under a car was for the jury, although there was no direct proof; it being sufficient to take the question to the jury that the facts proved be of such nature and be so related that such conclusion may be fairly inferred.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1002, 1003, 1007, 1008, 1016, 1035, 1043, 1053; Dec. Dig. § 285.*]

5. PLEADING (§ 11*)—FORM AND ALLEGATIONS —MATTERS OF EVIDENCE.

It is not necessary to allege the evidence by which a case is sought to be established.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 31; Dec. Dig. § 11.*]

6. MASTER AND SERVANT (§ 274*) — ACTION FOR INJURIES—ADMISSIBILITY OF EVIDENCE.

In an action for the death of a brakeman from falling under a car of a train which he had flagged, evidence that such train was not equipped with apparatus by which signals could

be conveyed from the engine back to the rear brakeman or conductor was admissible to show the necessity, on the part of deceased, of communicating his instructions to the brakeman and the conductor.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 939–949; Dec. Dig. § 274.*]

7. EVIDENCE (§ 512*)—OPINION EVIDENCE—COMMUNICATING ORDERS TO MOVING TRAIN.

In an action for the death of a brakeman from falling under the wheels of the rear car of a train he had flagged, there was expert testimony showing that deceased could have communicated his orders to the conductor from the ground, after which the brakeman on the train, an experienced railroad man, was permitted to testify that, at the rate the train was going, deceased could not have very well told him his instructions, and that he could not have communicated them without stopping the train. Held that, on the facts testified to, his opinion was admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2316; Dec. Dig. § 512.*]

8. EVIDENCE (§ 553*)—EXAMINATION OF EXPERT—HYPOTHETICAL QUESTION—EVIDENCE OF FACTS ASSUMED.

In an action for the death of a brakeman by falling under the wheels of the rear car of a train he had flagged, where it was shown that his conductor instructed him to inform the trainmen they had to go on the side track to pass, that under the rule it was his duty to stop trains and instruct the engineer as to passing, and, if he could do so conveniently, the conductor, that it was his duty to see that the switch was not closed by their trainmen, that, unless the rear brakeman got his signal from him, he would get off and close it, that he had made a main line out of a side track and had put deceased there to protect it, held that, on the facts in evidence, a hypothetical question to another witness assuming that deceased should notify the trainmen, was proper.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2369–2374; Dec. Dig. § 553.*]

9. TRIAL (§ 314*) — INSTRUCTIONS — CONCESSIONS BY JURY.

The jury took the case at 6 p. m. Wednesday and held it until Friday, when they reported that they were hopelessly divided on the question of liability, upon which the court said that it was an important case and that he would hold them together a few days longer, that jurors must discuss the question earnestly and arrive at a verdict if possible, and that they should be willing to make some concessions, and on the same day they returned a verdict for plaintiff. Held, that the court's statement as to the importance of the case and his advice to make concessions were reasonably calculated to injuriously affect the rights of defendant.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 472, 473, 747, 748; Dec. Dig. § 314.*]

10. MASTER AND SERVANT (§ 112*)—MASTER'S LIABILITY—SAFE PLACE TO WORK—PARTICULAR PLACE.

It is the duty of a railway company to provide a reasonably safe place for the particular purpose for which it is intended, but it need not make every part of its tracks alike safe for getting off or on moving trains; it is bound only to ordinary care to make those places safe at which it may reasonably anticipate use by its servants in boarding and alighting from trains.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 212, 213, 218–223; Dec. Dig. § 112.*]

11. MASTER AND SERVANT (§ 217*)—MASTER'S LIABILITY—ASSUMPTION OF RISK.

A brakeman assuming the risks ordinarily incident to his employment is not bound to inspect his place of work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

12. MASTER AND SERVANT (§ 278*)—MASTER'S LIABILITY — OPERATION OF TRAINS — PROXIMATE CAUSE — CONCURRENT NEGLIGENT ACTS.

In an action for a brakeman's death, held, on the evidence, that the defendant's failure to place a brakeman on the top of the rear car of the train might be found to be concurring negligence or the efficient proximate cause of his death.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

13. TRIAL (§ 260*)—REQUESTED INSTRUCTIONS—INSTRUCTIONS GIVEN.

Where the issues presented by specially requested charges are sufficiently covered by those given, such charges are properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

14. MASTER AND SERVANT (§ 296*)—ACTION FOR INJURIES — INSTRUCTIONS — CONTRIBUTORY NEGLIGENCE.

In an action for the death of a brakeman, where defendant denied that it was negligent in not providing a safe place for work and in not placing a brakeman on the rear car of the train which deceased flagged, and alleged that deceased was guilty of contributory negligence in attempting to board the train with a flag in his hand, as the testimony tended to show, a requested charge on contributory negligence should have been given.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1180–1194; Dec. Dig. § 296.*]

15. MASTER AND SERVANT (§ 296*) — ACTION FOR INJURIES—INSTRUCTIONS.

A requested charge, in an action for the death of a brakeman, permitting a verdict for defendant regardless of whether it was guilty of negligence concurring with that of deceased, was properly refused.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1180–1194; Dec. Dig. § 296.*]

16. TRIAL (§ 194*)—REQUESTED INSTRUCTIONS—WEIGHT OF EVIDENCE.

A requested charge on the weight of evidence was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

17. TRIAL (§ 203*) — ACTION FOR INJURIES — INSTRUCTIONS—AFFIRMATIVE AND NEGATIVE SIDE OF ISSUES.

In an action for the death of a brakeman, where the main charge submitted the issue of defendant's negligence in not furnishing a safe place for work and in not placing a brakeman on the rear car of the train deceased had flagged, and in which the evidence as to whether deceased had gone out of the line of his employment in boarding a car to communicate his instructions to the trainmen was conflicting, requested charges to instruct affirmatively on the negative side of the issue should have been given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 477–479; Dec. Dig. § 203.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Appeal from District Court, Randall County; Jno. W. Veale, Special Judge.

Action by Mrs. A. N. Finklea against the Pecos & Northern Texas Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Terry, Cavin & Mills, of Galveston, W. J. Flesher, of Canyon, and Madden, Trulove & Kimbrough and F. M. Ryburn, all of Amarillo, for appellant. Cooper, Merrill & Lumpkin, of Amarillo, for appellee.

HUFF, C. J. The appellee, Mrs. A. N. Finklea, sued the appellant, the Pecos & Northern Texas Railway Company, in the district court of Randall county to recover damages alleged to have resulted from the negligent killing of her son, R. H. Finklea, while employed by appellant as brakeman on one of its freight trains. A trial resulted in a verdict by the jury and judgment thereon in favor of the appellee for the sum of $5,500, from which judgment appellant brings the case to this court. The grounds of negligence set up by appellee in her petition are substantially as follows, which we take from appellee's brief: First, it is alleged that appellant failed to discharge its duty toward deceased in furnishing him a safe place to work. That there was scattered along the sides of the track of appellant company, at the point behind where the deceased, in the performance of his duty, undertook to board the train, a number of boulders, rocks, and chunks of gyp, and that there was across the pathway of the deceased, at the point where he undertook to board the car, a certain ditch or pit. Second, that the appellant company failed to have stationed, on the rear part of the train which caused the death of the deceased, a competent person to see and give orders and signals with reference to the running of said train, as was its duty to have done.

The appellant answered as follows, which we also take from appellee's statement: "Appellant pleads both contributory negligence and assumed risk on the part of the deceased, and in this connection it was alleged: (a) That the deceased knew the nature of the ground and was familiar with the existing circumstances at the time he undertook to board the train. (b) That, so seeing and knowing such condition, he undertook to board the moving train, contrary to the rules and through idle curiosity or some other purpose of his own, and not in line of his duties, while heavily clothed and wrapped and while holding in his gloved hands a flag and flagstaff, which was liable to cause, and did cause, his hold on the grabirons to break. (c) That he got hold of said grabirons in a negligent manner at the front end instead of at the rear end of the coach. (d) That his duties required him to remain on the ground flagging trains, but that, in disregard of such duty, he attempted to board the train under circumstances which rendered such act on his part an abandonment of his post of duty."

The deceased, Finklea, was killed by preferred extra 411 on the morning of February 14, 1912, near a switch stand at a small station or switch, known as Zita, a few miles south of Amarillo, or west, as it is known in railroad vernacular. He was working with work train 0246, as brakeman, at which work he had been engaged for some time previous to his death. The train with which he was at work hauled gyp, dirt, and gravel, placing the same on the track as ballast. On this day his train was at work on the main line between the head blocks of the switch, east and west of his train. His conductor, Clarke, had instructions to protect his train against all trains except Nos. 27 and 113. Upon arriving at Zita, Clarke instructed Finklea to go east and upon the east switch flag trains coming from Amarillo, and informed the trainmen that the crew of 0246 would take care of the switches and to pass through the switches, using the siding as a main line, and also directed his other brakeman to go west and open the west switch and then return and assist in spotting cars. Finklea flagged No. 411 upon its arrival, and, as it slowed down, boarded the engine and told the engineer he was flagging for work extra 0246, and that he was going to head him through the passing track; the switches being open on both ends in order to save delay on the local. He told the engineer to highball the switches, and that he would take care of them. He got down off the engine, and, as the way car reached him, attempted to board it, taking hold of the irons with both hands, took four or five steps, when his feet went under the car and he fell instantaneously; the car ran over and killed him. The way car used by 411 was a combination baggage and passenger coach, which had been so used for some time. It was not constructed as cabooses are with a cupola, which was usually used on freight trains. It was proven that it was the rule of the company that on freight trains passing switches, such as Zita, the rear brakeman or conductor should be stationed on top of the rear car. On this occasion neither was so stationed. The brakeman, Craig, was near the front of the way car in the baggage department, looking out at the door. The evidence is silent as to whether Finklea saw him until he started to fall. The conductor was inside the car. It is also shown that by the rules the rear brakeman must close the switches after his train is through, and that he would do so unless some responsible person was at the switch in charge of it. The testimony is conflicting as to whether it was the duty of Finklea, after notifying the engineer, to also notify the conductor, and also whether it was necessary to do so by word of mouth or by signal, and whether, under the then circumstances, he could give the order by signal.

The testimony is also conflicting as to the condition of the ground at the point of Finklea's fall. Under the disposition we shall make of the case, we think the above is a sufficient statement of the facts to an understanding of the questions discussed. The appellant requested the trial court to instruct a verdict for it and presents a number of assignments to the action of the court in refusing such charge, and also assigns error upon the action of the court in overruling its motions for new trial, because the evidence is not sufficient to support the verdict. The assignments, from 1 to 7, inclusive, present the acts complained of in refusing charge No. 1 and in overruling the motion for new trial, as above stated. After a careful examination of the testimony and the record, we have concluded there was testimony supporting the verdict, and we therefore overrule the assignment. It is contended that the deceased, at the time of his death, was not engaged in work in the line of his duty and was at that time performing acts outside of the scope of his employment. There is much conflict of evidence on this point, with reference to his duty. We think, without discussing the evidence, there was sufficient to warrant the court in submitting to the jury whether Finklea was killed while in the discharge of his duty and while acting within the scope of his employment and in whether or not he was a mere volunteer. The court properly submitted the question to the jury for their findings. Lipscomb v. Railway, 95 Tex. 5, 19, 20, 64 S. W. 923, 55 L. R. A. 869, 93 Am. St. Rep. 804; Labatt on Master and Servant, vol. 2, § 534. It is contended, also, that there is no evidence authorizing the jury to find negligence on the part of the appellant in failing to furnish Finklea a safe place in which to work. The testimony on this point is sharply conflicting, and was, we think, an issue to be submitted to the jury.

[1] It is true the appellant was at that time putting ballast on the track and it was in course of construction. These facts were proper for the consideration of the jury in determining whether appellant used ordinary care under the then conditions. Railway Co. v. Redeker, 67 Tex. 181, 2 S. W. 513; Railroad Co. v. Pitts, 42 S. W. 255; Railway Co. v. Alexander, 102 Tex. 497, 119 S. W. 1135.

[2] It is insisted by appellant that it was only required to use such care as a man of ordinary prudence would use in such work. In the case of Railway Company v. Alexander, supra, Judge Brown said: "In making this assertion, counsel has overlooked the fact that the same degree of care does not necessarily imply the same quantum of diligence to be used. In some instances ordinary care requires the exercise of great diligence, while in other cases the exercise of the same degree of care demands but slight diligence." In this case the jury could have inferred that, had appellant used that diligence required, the gyp clods or rocks and the depression would not have been left at the point near this switch where Finklea and others would likely board or alight from trains, and that appellant would have anticipated, and by the exercise of diligence would have removed the danger therefrom. If the jury, from the facts submitted to them, found that appellant was negligent in the particulars stated, then appellee was entitled to recover.

[3] Under the law, as it now exists, he assumed only the ordinary risk incident to his employment; and even had he known of the condition of the road at that time and place, or if its condition was open and obvious to him, a continuance of his service would not defeat the right of recovery under the rule of assumed risk. As we understand the law, since the Employers' Act, passed by the Twenty-Ninth Legislature, he was not required to refuse to continue his employment, if under like conditions an ordinarily prudent person would have continued in the work. It was therefore a question for the jury. Railway Co. v. Mathis, 101 Tex. 342, 107 S. W. 530; Railway Co. v. Alexander, 102 Tex. 497, 119 S. W. 1135; Railway Co. v. De Bord, 146 S. W. 667.

[4] It is urged that there is no testimony showing that any of the obstructions alleged caused Finklea to fall. It is said because Craig, the only witness who was looking at him as he started to fall, said he could not swear what caused this fall, and no other person testified that he stumbled over or into any of the alleged obstructions, therefore there was no evidence whatever that such clods or depression caused him to fall. The rule does not require that there be direct proof of the fact. This is often impossible. It is sufficient if the facts proved are of such nature and are so connected and related to each other that the conclusion therefrom may fairly be inferred. Finklea was killed near the switch stand in attempting to board the train going at the rate of six miles per hour. He was an experienced brakeman, and practically all the testimony shows that a railroad man can easily and with reasonable safety to himself board a train going at that rate of speed. He took hold of the irons with both hands, when his feet went under the car and he fell instantaneously. The circumstances and manner of his fall at once suggested some cause. What cause? Upon investigation, according to some of the testimony, were found, at the place and near there, gyp clods or rocks, rough ground, and a depression, four or five inches deep. From these facts a jury might reasonably infer that he stepped into the depression or upon a rock or gyp clod or both, which resulted in throwing him. We think this was sufficient from which the jury could draw the inference, and it cannot be said there was no fact warranting a finding by them that such obstruction caused his fall. Whether this was the cause of his fall was

a question for the jury under the facts, and the court properly submitted it to them for their findings. Railway Co. v. Belt, 24 Tex. Civ. App. 281, 59 S. W. 607.

Appellant, by its eighth assignment, assails the action of the court in refusing to grant it a new trial because the verdict is excessive and exorbitant. Without discussing the testimony on that point, we overrule this assignment.

[5, 6] Appellant's ninth assignment complains of the action of the court in permitting the appellee to ask the witness Craig the following question, "Was this train equipped with any signaling paraphernalia, by which signals could be conveyed back from the engine to the rear brakeman or conductor?" and objected to his answer, which is, "No, sir." The objection made is there was no pleading to support the testimony. The evident purpose of the question was to show as a circumstance the necessity of Finklea to communicate the instructions to the brakeman and the conductor about leaving the switches open. The evidence may have been of but little weight, but we think admissible for that purpose. It was not necessary to allege the evidence by which the case was sought to be established. It was not relied upon as an act of negligence by appellee, or alleged as such. This assignment is overruled.

[7] Appellee asked the witness Craig the following question, "Would he (deceased), at the rate of speed that the train was going, have been safe in undertaking to tell you by word of mouth what the situation was with reference to both switches?" The witness answered, "No, sir; not very handily." The objection made is because it calls for the conclusion and an opinion of the witness. The court overruled the objection. The action of the court is the basis for the appellant's tenth assignment. The witness was the brakeman on train 411, which ran over Finklea, and is the only one who testified that he saw him as he started to fall. He was a railroad man of some years experience and was acquainted with the rules of the company. Inasmuch as it was sought to show by expert witnesses and others that Finklea could have communicated the orders to the conductor from the ground, and taking into consideration that the witness then knew the speed of the train, conditions at the time, as well as being familiar with the signals and their interpretation, we think he could give his opinion as to whether the order could have been delivered from the ground. As a rule, the opinion of the witnesses cannot be taken in evidence; but this witness had detailed all the transaction, and the order was stated to him, and, if he had not been an expert, we think enough of the facts had been detailed to the jury previous to this question that would render his opinion admissible. Railway Co. v. Arthur, 124 S. W.

213; American Construction Co. v. Caswell, 141 S. W. 1013; Railway Co. v. Daniels, 9 Tex. Civ. App. 253, 28 S. W. 548, 711. But, as a railroad man, we think he was sufficiently qualified as an expert. Railway Co. v. Smith, 90 S. W. 929. We therefore overrule the tenth assignment.

Appellant objected to the following question to the witness Craig, for the reason that it called for and gave but the opinion and conclusion of the witness: "Q. Suppose a competent brakeman was flagging as this man was there, was it necessary for him to know whether the orders he had to convey were understood by the trainmen, and what would be his attitude under those circumstances? A. There is no question but what it would be understood if he told them. Q. Could he have told them without going on the train under the circumstances you have detailed? A. Not without stopping the train; no, sir." We overrule the eleventh assignment for the reasons given in passing on the tenth assignment.

[8] The appellant assigns error No. 12, based on the questions to and answers of J. F. Carder: "Q. When a brakeman is sent out as a flagman, what is his attitude with reference to following instructions? Whose instructions must be followed? A. Well, he should follow the instructions of the conductor in charge of the train he is on. Q. Now, had you been flagging on a train of this kind, under instructions given by the conductor to flag incoming trains and instruct them that a side track was being used as a main line, would you so instruct them? A. I would instruct the engineer. Q. You would instruct the engineer? You would not have instructed the rear brakeman or conductor? A. No, sir. Q. To keep them from closing the switch? A. No, sir. Q. If the conductor instructed you to inform the train crew and the conductor, if it was convenient, what would you have done? A. I would have instructed the conductor, too, if it had been convenient. Q. You would so inform him, if it was convenient? If it had been convenient? A. If he had been on the platform or on top of the train, I might have told him that we were heading them through." Appellant objects to the questions and answers because there was no evidence that the conductor had so instructed the deceased, and such evidence was immaterial, irrelevant, and incompetent. The court overruled the objection, to which the appellant excepted. This witness testified in chief for appellant as an expert on the duties of Finklea under a hypothetical case, based on the facts as claimed by appellant. The appellee asked the questions based on what he claimed the facts to be. Clarke, the conductor, under whose orders Finklea was working, "instructed him to inform the trainmen they had to go through there and pass by." This witness, on direct examination by appellant as

to Finklea's duty, said: "Under the rule, it was Mr. Finklea's duty to stop the trains and give them instructions that they were to follow in passing us. He should give these instructions to the engineer. Under the circumstances, he would notify the engineer, and, if he could do so conveniently, the conductor." On cross-examination, he said: "It was his duty to see that the switch was not closed by their trainmen. Unless the rear brakeman got a signal from him, the rear brakeman that went in would get off and close it. I had orders, under which I was operating, that gave me the right to protect my train against all but first-class trains. Under those orders I was taking the authority to make a main line out of that side track. I do not think it will be necessary for a rule to be in the rule book, authorizing a conductor to make a main line out of a side track, and to put a flagman out there to protect it. I do not think there is any rule that would cover this case that I know of. * * * At his position east of the switch he could have hallooed to the rear brakeman and have let him gone through that switch, and the rear brakeman would have gone on and not closed it. If he had flagged the train and notified the engineer, and nobody was in sight on the way car to receive his signal, they would have closed the switch; that is their duty." We believe the statement by Clarke that Finklea was to notify the "trainmen," and his interpretation that, under the rules and the circumstances, Finklea should have given the instructions to the conductor, if convenient, renders the objection untenable. We think, under the interpretation Clarke gave the rules—that is, Finklea should notify the conductor—and his order to notify the "trainmen," that appellee had the right to construct a hypothetical question, assuming that to be his order. If the jury found the facts did not support the hypothesis, then they would disregard the questions and answers. As we understand the rules, a hypothetical question must be based on the facts in evidence. What were the orders of Clarke? To notify the "trainmen"? Who did this include? Clarke said, under the circumstances and rules, the conductor, if convenient. Other witnesses differed with him on this point, but that was a question for the jury.

The thirteenth assignment complains at the action of the court in permitting the questions and answers of Eli Smith. Without setting out the questions and answers, we will state that they appear to have been the opinion of Smith, who was shown to have been a railroad man of long experience and familiar with the rules and customs of railroads; and, for the reasons heretofore stated under the previous assignments, we overrule the thirteenth assignment.

[9] In the fourteenth assignment, complaint is made of the remarks of the court

to the jury after the case had been submitted to them under the charge of the court. The case was given to the jury at 6 o'clock p. m., Wednesday, May 22, 1912, and they continued their deliberations until Friday, May 24th, when they reported they were hopelessly divided and unable to agree. The court thereupon asked the foreman of the jury whether they were divided upon the question of liability or the question of amount, and the foreman of the jury stated they were divided upon the question of liability. The court then said to them: "Gentlemen of the jury, I am going to send you back for further deliberation. This is an important case, and one we took some time to try, and I believe I will just hold you together a few days longer. Jurors frequently differ on the interpretation of evidence, and you must get down and discuss the evidence earnestly and arrive at a verdict, if possible. You should be willing to make some concessions in an effort to arrive at a common understanding and agreement. You may return with the sheriff to your room and deliberate further and see if you cannot reach a verdict." Thereafter on the same day, as shown by the judgment, the jury returned a verdict for appellee, in the sum heretofore stated. The language used by the trial court is substantially the same as that used in the case of Railway Co. v. Johnson, 99 Tex. 337, 90 S. W. 164, which our Supreme Court considered improper. While the opinion does not appear to be based upon the language used, it is there said it was improper for the court to advise the jury. This is a case in which a verdict for either party upon the weight of the evidence might, with propriety, be permitted to stand. In such case, great care and caution should be exercised by the trial court in giving advice or instructions to jurors. It is insisted by appellee that the language is not such as to indicate that the jury should compromise. The jury appear to have been divided upon the question of liability or nonliability. The court told them they should make concessions in an effort to arrive at a common understanding. He does not indicate, it is true, who should, or how such concessions should be made, but it is not at all certain how the jury understood the direction or advice of the court. Should one side concede that it is wrong and the other right? In this case the jury told the court it was a question of liability. They could have understood him as meaning that one side or the other should concede that it is wrong and the other right. This advice, enforced with the statement of the importance of the case and the time required for its trial, was reasonably calculated and probably did injuriously affect the rights of appellant. Under the law, appellant was entitled to the judgment of 12 men, under their oath, based upon their honest conviction of its liability upon the evidence

adduced upon the trial. If any portion of them conceded their conviction, then it was not such verdict. The cases cited by appellant appear to support its contention. In addition to the Johnson Case, supra, they cite Texas Midland v. Byrd, 41 Tex. Civ. App. 164, 90 S. W. 185; Wootan v. Partridge, 39 Tex. Civ. App. 346, 87 S. W. 356; O'Neal v. Richardson, 78 Ark. 132, 92 S. W. 1117; Cornelison v. Ft. W. & R. G. Ry. Co., 46 Tex. Civ. App. 509, 103 S. W. 1186. While it may be true that verdicts must be, and doubtless are, reached by mutual concessions by jurors to the honesty, candor, and good judgment of their fellows, and to the weight of argument or reason advanced by each in discussing the evidence as applicable to the law given them in charge, it is not at all certain that they would so understand the statement from the presiding judge that they should make some concessions in an effort to arrive at a common understanding. The jury were divided upon liability or nonliability of the appellant. Those holding to nonliability, in order to reach a common understanding, conceded to the others appellant's liability. The court told them not only they could but "should," and therefore they were acquitted of stultification, under their oath. We sustain the fourteenth assignment.

[10, 11] Complaint is made of the fourth paragraph of the court's charge. The charge instructed the jury with reference to the duty of appellant to furnish Finklea a reasonably safe place to occupy while in the active discharge of his duty. The language complained of appears to be in that portion of the charge which is "and to exercise ordinary care to keep and maintain its track, and a sufficient space of ground adjacent therewith, reasonably clear of all obstructions, which would interfere with said brakeman in the active discharge of his duties." This language of the charge, taken in connection with paragraphs 5 and 6, is perhaps sufficiently definite as to the place in confining it to the one where deceased was required to board trains; and, under the charges given and the assignments made, we would not reverse this case on that ground. But, in view of another trial, we think the charge should be so framed as to confine the duty of appellant to such place as it should have reasonably anticipated its employés would use for the purpose of embarking or alighting from trains. It is the duty of a railway company to provide a reasonably safe place for the particular purpose for which it is intended. We do not think it can be said that every portion of a railway track should be alike safe for getting on or off of moving trains. Where appellant could and should have reasonably anticipated such use, then the duty devolves upon the company to make and keep it reasonably safe for such use. Railway Co. v. Reiden, 48 Tex. Civ. App.

401, 107 S. W. 661; Railway Co. v. George, 40 Tex. Civ. App. 267, 89 S. W. 1091. It is further complained that the charge told the jury that it was not his duty to inspect the place. As we understand this is the general rule in assumed risk, and we are inclined to think that paragraph No. 7 of the court's charge sufficiently directed the jury's attention to what would be required of him as a reasonably prudent man. We are inclined to believe the better practice would be for the court, in connection with this paragraph, to charge the rule now in force in this state by the acts of the Twenty-Ninth Legislature. Railway Co. v. Alexander, 102 Tex. 497, 119 S. W. 1135; Railway Co. v. De Bord, 146 S. W. 667.

Appellant assails paragraph 5 of the court's charge by assignments Nos. 16, 17, 18, and 19. Without setting out the charge or various assignments thereto, we hold the charge not subject to the objections urged. Most of the grounds urged go to the effect that the evidence was not sufficient to warrant the court in submitting the case of negligence set out by the pleadings. We think the evidence sufficient. The court required the jury to find that Finklea, at the time the car ran over him, was in the discharge of his duty as brakeman, setting out the duties required of him as alleged in the petition, to find whether it was the duty of appellant to have stationed on top of the rear car some person to whom deceased could have communicated the orders or instructions, and to find whether appellant was negligent in the failure to have such person so stationed, and to find whether thereby it became the duty of deceased to get aboard the train, and, in attempting to do so, he was caused to stumble and fall by reason of boulders, ditches, and depressions along the right of way at the point where he attempted to board the train, and to find whether appellant had exercised ordinary care to provide a reasonably safe place where he was required to board the train, and whether the appellant was negligent in providing such place, or negligent in failing to have some one on top of the rear car, "and you further find that either or both acts of negligence, on the part of defendant company, if you find it was negligence in either case, was the proximate cause of said Finklea's death, then, in that case, you will find for plaintiff," etc.

[12] It is urged that appellee could not recover on the ground that appellant failed to have some one on the back of the train in the absence of other negligence. We are unable to agree with appellant. If the failure to place a brakeman on top of the rear car was an act of negligence on the part of appellant, and, by reason of such failure, the deceased, in order to deliver the orders to the conductor, attempted to board the car, and fell by reason of a clod or depression near the track, then we think such negli-

gence would be the proximate cause, though not nearest in point of time to the fall. It would be so linked and bound to the events succeeding it that, all linked together, they create and become one continuous whole; the one event so operating upon the other as to tie the result to the primary cause (that is, the failure to place the person on top and rear car). The jury may have found the rock and depression so placed was not negligence within itself, but part of the chain of acts which concurred in the death of Finklea. It would not be such an independent cause, disconnected from the first original cause, as would render the first not the efficient or proximate cause. If the place was unsafe, through the negligence of appellant, they may have found it concurring negligence or the efficient proximate cause. It will be noted that the court in its charge presented all the acts pleaded by plaintiff in the conjunctive form until the latter part of the clause, where he presented the two acts of negligence in disjunctive form. In this we find no such error as requires a reversal of the case upon that ground. We believe the charge to be substantially correct. Mills v. Railway Co., 94 Tex. 253, 254, 59 S. W. 874, 55 L. R. A. 497; Railway Co. v. Sweeney, 14 Tex. Civ. App. 216, 36 S. W. 800; Railway Co. v. Gist, 31 Tex. Civ. App. 662, 73 S. W. 857; Shippers' Compress v. Davidson, 35 Tex. Civ. App. 558, 80 S. W. 1032.

By assignments 20, 21, 22, and 23, appellant assails the sixth, seventh, and eighth paragraphs of the court's charge. These charges are addressed to the question of assumed risk and contributory negligence. The charges are too long and the assignments and propositions too numerous to attempt to set them out or even discuss the questions. We think the charges are not subject to the criticisms of appellant, and with reasonable clearness present the law as applicable to the facts. We therefore overrule the above assignments.

[13] We overrule the twenty-third and twenty-fourth assignments of error. We think the court sufficiently covered the issues presented by the requested special charges Nos. 2 and 3.

[14] We are inclined to the opinion that special charge No. 4, or a charge embodying the issue presented, should have been given. The appellant specially denied it was negligent in the particulars alleged, and further alleged that the deceased himself was guilty of negligence in attempting to board the train with a flag or flagstaff in his hand, etc. There is testimony from which the jury might have inferred that he did so attempt to board the train. If his act was negligent in so attempting to board the train, and this act of negligence caused his death, and if there was no concurring negligence on the part of appellant, then appellee could not recover. If there was concurring negligence on the part of appellant, then appellee's damages should be diminished in proportion to the amount of negligence the acts and conduct of deceased contributed to his death. This assignment we believe should be sustained. Ft. Worth & Denver City Railway Co. v. McCrummen, 133 S. W. 899.

[15] The twenty-seventh assignment is to the action of the court in refusing charge No. 5. We overrule this assignment for the reason that a verdict is instructed for appellant, regardless of whether appellant was guilty of negligence concurring with that of the deceased.

[16] We overrule the twenty-eighth assignment. The charge appears to be on the weight of the evidence.

[17] The assignment complaining of the action of the court, in refusing special charges Nos. 10 and 13, and perhaps others, present the question as to whether the court erred in refusing the special charges. In the main charge the court submitted the grounds of negligence as charged in the petition, assumed risk, and contributory negligence. The thirteenth specially requested charge is as follows: "If you find that the defendant used ordinary care in maintaining its track and roadbed in a reasonably safe condition, for the use of its employés, and used ordinary care to warn them of its unsafe condition, if it was in an unsafe condition, and further find that the defendant was not negligent in other particulars, alleged by the plaintiff, then you will find for the defendant." Some of the other charges submit the other questions of negligence charged by plaintiff in its petition. In discussing these charges, we will refer to them in a general way, holding that some of them should have been given. As said in Traction Co. v. Moberly, 109 S. W. 483: "The testimony was sharply conflicting as to whether or not the car was suddenly started at the time the plaintiff claimed to have been thrown thereby to the ground, and it has been often held to be the duty of the trial court, when requested, to present to the jury in such cases affirmatively the negative side of the issue. This right is not impaired by the fact that the same matter has been negatively presented in the main charge." In this case there is a conflict in the testimony as to whether the deceased had gone out of his line of employment, whether it was his duty to communicate the orders to the conductor, and whether the failure to have a brakeman on top of the rear car was the cause of the injury, and whether or not appellant was negligent in maintaining its railway track where Finklea was killed. As we read the charges, some of them presented affirmatively the negative of the several issues. Railway Co. v. Johnson, 100 Tex. 237, 97 S. W. 1039; Railway Co. v. Hall, 98 Tex. 480, 85 S. W. 789, 790; Railway Co. v. Lester, 99 Tex. 214, 89 S. W. 752. Without discussing

the matter further, we think those charges requesting the court to instruct the jury affirmatively on the negative side of the issue should have been given, or given in a proper charge prepared by the court.

For the errors pointed out, the case is reversed and remanded.